UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL LEWIS, LAUREN TAYLOR, and minors C.L. and B.L., by and through their Guardian ad Litem,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO; CITY OF CORONADO; CORONADO POLICE OFFICER PATRICK O'MALLEY; CORONADO POLICE OFFICE ROBERT CLINE; COUNTY AGENT IAN BAXTER; COUNTY AGENT N. QUINTEROS; COUNTY AGENT SUPERVISOR BENITA JEMISON; COUNTY AGENT ABIGAIL JOSEPH; COUNTY AGENT SUPERVISOR ANTONIA TORRES; COUNTY AGENT BROOKE GUILD; COUNTY AGENT SUPERVISOR ALFREDO GUARDADO; and DOES 1 through 50,<br><br>Defendants. | Case No. 13-cv-2818-L (JMA)<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND [doc. #3]** |

This action arises from Plaintiffs' federal claims under 42 U.S.C. § 1983 and state law claims against Defendants. City of Coronado and Coronado Police Officers Patrick O'Malley ("O'Malley") and Robert Cline ("Cline") now move to dismiss the claims under Federal Rule of Civil Procedure 12(b)(6).

The Court found this motion suitable for determination on the papers submitted and

13cv2818

without oral argument. *See* CIV. L.R. 7.1(d.1). For the following reasons, the Court **GRANTS** Defendant's motion to dismiss with leave to amend.

## I.  BACKGROUND

Plaintiffs Michael Lewis ("Lewis") and Lauren Taylor ("Taylor") are parents of two boys: two-year-old B.L. and four-year-old C.L. (Compl. ¶ 2.) They are all residents of Coronado, California. (*Id.*) Lewis served in the Gulf War from 1991 to 1994 and was exposed to unknown chemicals. (*Id.* ¶ 4.) Since then, Lewis suffered from chronic migraines. (*Id.*) Lewis legally used marijuana to release the pressure of the migraines upon the advice of a physician. (*Id.*) Plaintiffs allege that although Lewis had marijuana at home, the children were not exposed to marijuana or marijuana smoke. (*Id.*)

According to the Complaint, on August 5, 2011, police officers with the City of Coronado received an anonymous "tip" that the Lewis family was smoking marijuana around children. (Compl. ¶ 5.) That same day, officers went to the Lewis family residence and Lewis allowed them to enter and take photographs. (*Id.* ¶ 6.) Taylor and the children were not home at the time. (*Id.*) Although the officers found marijuana in the home, Lewis presented his medical marijuana recommendation to them. (*Id.* ¶ 7.) The officers then left and wrote a report, in which they identified marijuana as the only purported "hazard" in the residence. (*Id.*) Neither Lewis nor Taylor were ever criminally prosecuted for the possession and/or use of the marijuana. (*Id.*)

On August 8, 2011, County Agents Ian Baxter ("Baxter") and N. Quinteros ("Quinteros") were working in the course and scope of their employment for the County of San Diego, specifically with the Health & Human Services Agency. (Compl. ¶ 8.) They were accompanied by Coronado Police Officers O'Malley and Cline who were working within the course and scope of their employment with the City of Coronado. (*Id.*) After consulting their supervisors and O'Malley and Cline, and obtaining their advice and agreement, Baxter and Quinteros seized C.L. and B.L. from their home. (*Id.* ¶ 9.) Plaintiffs contend that Defendants deposited the children at the Polinsky Center – an emergency shelter for allegedly abused and neglected children in San Diego County. (*Id.*) The only allegations against Lewis and Taylor were essentially that Lewis legally used marijuana and police found marijuana in the home. (*Id.* ¶ 10.) Plaintiffs further

allege that County agents and City agents seized C.L. and B.L. without a warrant based on allegations of "general neglect." (*Id.* ¶ 11.) Specifically, there was no reasonable evidence to suggest that either child was in immediate danger of suffering severe bodily injury or death at the hands of their parents, which would have been necessary to obtain a protective custody warrant. (*Id.*) Defendants allegedly failed to conduct any independent investigation prior to seizing the children. (*Id.* ¶ 12.)

On the same day the children were seized, Lewis and Taylor expressed their willingness to have their home checked for safety, submitted photographs showing a clean kitchen, got a lockbox for medication and had a padlock where the marijuana was grown. (Compl. ¶ 14.) They presented this evidence to Baxter. (*Id.*) Despite the evidence, Baxter and Quinteros continued to have C.L. and B.L. detained. (*Id.*) Their supervisors Jemison and Guardado, after a detailed review of the matter, ratified their conduct. (*Id.*)

Baxter filed a petition with the juvenile court in the County of San Diego ("County") and on behalf of the County. The County and Baxter asserted one count against Lewis and Taylor. (Compl. ¶ 20.) Baxter allegedly misled the court by making false statements. (*Id.* ¶ 21.) At some point, County Agent Joseph assumed Baxter's role as the lead agent on the case while County Agent Torres assumed Jemison's supervisory role. (*Id.* ¶ 22.) County Agent Guild is alleged to have acted in concert with Joseph. (*Id.*) Joseph allegedly continued to lie to the juvenile court and acted in concert with her supervisor Torres in providing knowingly false information. (*Id.* ¶¶ 23, 24.) Joseph and Torres disregarded the exculpatory evidence Lewis provided and continued to detain the children in County facilities. (*Id.* ¶¶ 25, 27.) On February 3, 2012, the County and Joseph, with the approval of Torres, filed amended petitions where they added a second count. (*Id.* ¶ 28.) On February 6, 2012, the court, based on the false information provided by County agents, declared C.L. and B.L. dependants of the juvenile court. (*Id.* ¶ 30.) On August 2, 2012, the Court of Appeal reversed the juvenile court's order. (*Id.* ¶ 31.) The children remained out of their home until the family was reunited on August 7, 2012. (*Id.*)

On July 31, 2013, Plaintiffs commenced an action in the Superior Court of the State of California, San Diego, against Defendants County of San Diego, City of Coronado, O'Malley,

Cline, Baxter, Quinteros, Jemison, Joseph, Torres, Guild, and Guardado. The Complaint asserts seven causes of action: (1) deprivation of the 14th Amendment right to familial relations under 42 U.S.C. § 1983; (2) unconstitutional official policy, practice, or custom under 42 U.S.C. § 1983; (3) battery; (4) false imprisonment; (5) negligence; (6) Intentional Infliction of Emotional Distress; and (7) violation of the Bane Act, CAL. CIV. CODE § 52.1.

On November 27, 2013, Defendants County of San Diego, Baxter, Quinteros, Jemison, Joseph, Torres, Guild, and Guardado removed this action to federal court. On December 6, 2013, Defendants City of Coronado, O'Malley, and Cline moved to dismiss the Complaint, arguing that the allegations are impermissibly vague. On January 3, 2014, Plaintiffs filed an opposition to the motion to dismiss. On January 14, 2014, Defendants City of Coronado, O'Malley, and Cline filed a reply in further support of their motion to dismiss.

## II.     LEGAL STANDARD

The court must dismiss a cause of action for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  The court must accept all allegations of material fact as true and construe them in light most favorable to the nonmoving party. *Cedars-Sanai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007).  Material allegations, even if doubtful in fact, are assumed to be true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  However, the court need not "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (internal quotation marks omitted).  In fact, the court does not need to accept any legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted).  Instead, the allegations in the complaint "must be enough to raise a right to relief above the speculative

level." *Id.* Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

### III.  DISCUSSION

#### A.  Plaintiffs' Federal Claims under 42 U.S.C. § 1983

##### 1. Coronado Police Officers O'Malley and Cline

Plaintiffs' federal claim against O'Malley and Cline arises under 42 U.S.C. § 1983. To prevail on a Section 1983 claim, a plaintiff must demonstrate that state action deprived him of federally-secured constitutional rights. *See Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988). The parties do not dispute that O'Malley and Cline acted under color of state law. The issue is whether their actions violated Plaintiffs' due process right to familial relations under the Fourteenth Amendment.

The Supreme Court has long recognized, as a component of "substantive" due process, that parents have a liberty interest in familial relations, which includes the right to "establish a home and bring up children" and "to control the education of their own." *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923); *see also Troxel v. Granville*, 530 U.S. 57, 65 (2000) (noting that the right to familial relations is the "oldest of the fundamental liberty interests recognized"). Thus, parents have the right not to "be separated from their children without due process of law, except in emergencies." *Mabe v. San Bernardino County*, 237 F.3d 1101, 1107 (9th Cir. 2001). "Under certain circumstances, these rights must bow to other countervailing interests and rights, such as the basic independent life and liberty rights of the child and of the State acting as *parens patriae*; and on occasion, this accommodation may occur without a pre-deprivation hearing." *Mueller v.*

*Auker*, 700 F.3d 1180, 1186 (9th Cir. 2012).

A government official may intrude on a parent's custody of his child without obtaining a warrant if the official has information "at the time of the seizure that establishes 'reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury.'" *Mabe*, 237 F.3d at 1106 (citing *Wallis v. Spencer*, 202 F.3d 1126, 1138 (9th Cir.1999)). The court uses an objective standard to determine whether information provided an official with reasonable cause to believe exigent circumstances exist. *See Wallis*, 202 F.3d at 1139 n. 9. No fixed formula determines exigency, and courts consider the totality of the circumstances. *See Doe v. Kearny*, 329 F.3d 1286, 1295 (11th Cir.2003). Relevant factors that can weigh in favor of exigency include the following: (1) the parents' credibility; and (2) the age of the child. *See Ram v. Rubin*, 118 F.3d 1306, 1309 (9th Cir.1997); *see also Dietz v. Damas*, 932 F.Supp. 431, 447 (E.D.N.Y.1996).

Here, the Complaint alleges that O'Malley and Cline accompanied County Agents Baxter and Quinteros to Plaintiffs' home on August 8, 2011. (Compl. ¶ 8.) Baxter and Quinteros, after consulting with O'Malley and Cline, seized the children. (*Id.* ¶ 9.) Thus, it was Baxter and Quinteros who removed the children from their parents. There are no specific allegations that O'Malley and Cline personally seized the children, placed the children at the Polinsky Center, or participated in any of the court proceedings.

In their Opposition, Plaintiffs rely on a long line of civil cases and assert that police officers have a duty to intervene when they witness government officials violating the constitutional rights of a suspect or other citizen. (Opp'n at 8: 8-17.) Therefore, Plaintiffs argue that O'Malley and Cline had an obligation to intercede and stop the seizure when County agents consulted with them. (*Id.* at 9.) The Court is unconvinced by Plaintiffs' argument. First, Plaintiffs have misstated the rule. "Police officers have a duty to intercede when their *fellow officers* violate the constitutional rights of a suspect or other citizen." *United States v. Koon*, 34 F.3d 1416, 1447 n. 25 (9th Cir. 1994) (emphasis added). More importantly, these cases are inapposite here because, unlike this case, they all involve the use of excessive force by police officers and the violation of the plaintiff's Fourth Amendment right to be free from unreasonable

force. *See Byrd v. Brishke*, 466 F.2d 6 (7th Cir. 1972) (holding that a police officer may not ignore his duty and fail to stop other officers who punish a third person in his presence or otherwise within his knowledge); *see also Byrd v. Clark*, 783 F.2d 1002 (11th Cir. 1986) (finding the police officer directly liable under Section 1983 on the ground that he failed to intervene in an unprovoked beating at the hands of his fellow officer); *Putman v. Gerloff*, 639 F.2d 415 (finding deputy's failure to intervene in beating administered by sheriff sufficient to subject him to liability). Finally, no facts in the Complaint demonstrate that O'Malley and Cline knew or should have known plaintiffs' constitutional rights were being violated. There are no allegations that O'Malley and Cline participated in or knew about the prior investigation of the Lewis family on August 5, 2011.[1] Additionally, the Complaint contains no factual allegations indicating that O'Malley and Cline knew or should have known the children were not in imminent danger. Therefore, Plaintiffs fail to state a plausible claim against O'Malley and Cline for violation of the Fourteenth Amendment right to familial relations.

In light of the foregoing, Defendants' motion on this basis is **GRANTED WITH LEAVE TO AMEND**.

### 2. City of Coronado

Plaintiffs contend that the City of Coronado ("City") has violated their constitutional rights by enforcing unlawful policies, including but not limited to the policies of removing children from their family without exigent circumstances, communicating false information to the family court, and holding the children after any alleged basis for detention is negated. (Compl. ¶ 55.) Plaintiffs further allege that the City is liable under Section 1983 by implementing a policy of inadequate training. (*Id.*)

The Supreme Court held that municipal entities are subject to Section 1983 liability, but not on the basis of *respondeat superior*. *Monell v. Dep't of Soc. Servs. of City of New York*, 436

---

[1] The Complaint alleges that *police officers* investigated the Lewis family on August 5, 2011, and that Lewis presented his medical marijuana recommendation to the *officers* (emphasis added). However, the Complaint does not allege that O'Malley and Cline were among the above-mentioned police officers.

U.S. 658, 690-91 (1978). *Monell* established that a municipality is subject to liability under Section 1983 only when the violation of the plaintiff's federally protected right can be attributable to the enforcement of a municipal policy, practice, or decision of a final municipal policy maker. 436 U.S. at 694. A *Monell* claim, whether for a municipal policy or for failure to train, generally cannot be premised on a single unconstitutional incident. *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy"); *City of Canton v. Harris*, 489 U.S. 378, 390-91 (1989) ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program"); *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001) (noting that the failure to train must result from a conscious or deliberate choice to follow a course of action made from among various alternatives). To impose municipal liability based on deliberately indifferent training, the plaintiff has to show that deliberate indifference was the "moving force" behind the violation of his federally protected right. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).

Plaintiffs' claim against the City contains mere conclusory statements and a simple formulaic recitation of the elements of a cause of action. *See Twombly*, 550 U.S. at 555. Although plaintiffs assert a pattern of removing and detaining children without legal basis, they base the allegation only on an isolated event of their own and fail to show a "persistent and widespread" policy. *See Monell*, 436 U.S. at 691. Similarly, Plaintiffs' allegation of inadequate training is devoid of factual support. Furthermore, the allegations of communicating false information to the family court and holding the children after the parents presented clear evidence are not against the City's police officers.[2] Therefore, no facts in the Complaint show

---

[2] The Complaint alleges that County Agents made false statements to the family court and continued to detain the children despite the exculpatory evidence Lewis provided. The Complaint contains no factual allegations that Coronado police officers were involved in such conduct.

that the City has enforced such policies.

In light of the foregoing, Defendants' motion on this basis is **GRANTED WITH LEAVE TO AMEND**.

### B. Plaintiff's State Law Claims

#### 1. Plaintiffs Fail to Plead Compliance with the California Tort Claims Act

Plaintiffs allege various state law claims. Although the court may exercise supplemental jurisdiction over state law claims, a plaintiff must first have a cognizable claim for relief under federal law. *See* 28 U.S.C. § 1367. Moreover, if a plaintiff pursues state law claims, he must clearly identify each claim and demonstrate compliance with the California Tort Claims Act ("CTCA"). Under the CTCA, a plaintiff may not maintain an action for damages against a public employee unless he has presented a written claim to the state Victim Compensation and Government Claims Board within six months of accrual of the action. CAL. GOV'T CODE §§ 910, 911.2, 912.4, 912.6, 945.4; *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir.1995). A plaintiff may file a written application for leave to file a late claim up to one year after the cause of action accrues. CAL. GOV'T CODE § 911.4. The purpose of the CTCA is "to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation." *City of San Jose v. Superior Court*, 12 Cal. 3d 447, 455 (1974). Thus, in pleading a state law claim, a plaintiff must allege facts demonstrating that he has complied with the CTCA's claim presentation requirement. *State of California v. Superior Court (Bodde)*, 32 Cal. 4th 1234, 1243 (2004). Failure to demonstrate compliance constitutes a failure to state a cause of action. *Id.*

Plaintiffs have not pleaded their compliance with the CTCA in the Complaint. The only allegations concerning the Coronado police officers occurred on August 8, 2011, thus the cause of action against the City and its police officers accrued on August 8, 2011. A claim for damages against the City and its officers should have been filed no later than February 8, 2012 and a late claim application should have been filed no later than August 8, 2012.

In light of the foregoing, Defendants' motion on this basis is **GRANTED WITH LEAVE TO AMEND**.

      2.    <u>Plaintiffs Fail to Sufficiently Plead the State Law Claims</u>

The state law causes of action against the City and its officers would nevertheless be dismissed because Plaintiffs fail to state a plausible claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). Plaintiffs allege the following state law claims: (1) battery; (2) false imprisonment; (3) negligence; (4) Intentional Infliction of Emotional Distress; and (5) violation of the Bane Act, CAL. CIV. CODE § 52.1. However, these state law claims are inadequately pleaded: they contain mere conclusory statements and a simple formulaic recitation of the elements of a cause of action. *See Twombly*, 550 U.S. at 555. Plaintiffs vaguely lump all defendants together without providing any factual allegations that specify separate acts of O'Malley and Cline that would subject them to liability. Because the Complaint does not state plausible state law causes of action against the Coronado police officers, the City cannot be held vicariously liable.

In light of the foregoing, Defendants' motion on this basis is **GRANTED WITH LEAVE TO AMEND**.

**IV.   CONCLUSION & ORDER**

In light of the foregoing, the Court **GRANTS** Defendant's motion to dismiss with **LEAVE TO AMEND**. If Plaintiffs decide to file an amended complaint, they must do so by **<u>July 28, 2014</u>**.

**IT IS SO ORDERED**.

DATED: July 15, 2014

                                                 M. James Lorenz
                                                 United States District Court Judge

COPY TO:

HON. JAN M. ADLER
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL