GERALD SINGLETON, State Bar No. 208783
BRODY A. McBRIDE, State Bar No. 270852
SINGLETON LAW FIRM, APC
115 West Plaza Street
Solana Beach, CA  92075
Tel.  (760) 697-1330
Fax.  (760) 697-1329
Email.  gerald@geraldsingleton.com
          brody@geraldsingleton.com

SHAWN A. MCMILLAN, State Bar No. 208529
STEPHEN D. DANER, State Bar No. 259689
SAMUEL H. PARK, State Bar No. 261136
LAW OFFICES OF SHAWN A.MCMILLAN, APC
4955 Via Lapiz
San Diego, California 92122
Phone: (858) 646-0069
Fax:   (206) 600-4582
Email.  attyshawn@netscape.net
          steve.mcmillanlaw@gmail.com
          sampark.mcmillanlaw@gmail.com

LANCE ROGERS, State Bar No. 258088
LAW OFFICES OF LANCE ROGERS, APC
835 Fifth Avenue, Suite 307
San Diego, CA 92101
Tel:  (619) 333-6882
Fax:  (619) 330-0601
Email.  lance@lrogerslaw.com

Attorneys for Plaintiffs MICHAEL LEWIS,
LAUREN TAYLOR, and minors C.L. and B.L.

## FEDERAL DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL LEWIS, LAUREN TAYLOR, and minors CAMERAN LEWIS and BAILEY LEWIS, by and through their Guardian ad Litem, | Case No.  13cv2818-L (JMA) <br><br> **FIRST AMENDED** COMPLAINT **FOR VIOLATIONS OF CIVIL** |

1

|   |   |   |
|---|---|---|
| 1 | Plaintiffs, | **RIGHTS (42 U.S.C. § 1983) AND STATE LAWS** |
| 2 | | |
| 3 | v. | 1. 42 U.S.C. § 1983 – Deprivation of Rights Under Fourteenth Amendment to Parental and Familial Relation |
| 4 | COUNTY OF SAN DIEGO; CITY OF CORONADO; CORONADO | |
| 5 | POLICE OFFICER PATRICK O'MALLEY; CORONADO POLICE | 2. 42 U.S.C. § 1983 - Unconstitutional Official Policy, Practice, or Custom (*Monell* Claim) |
| 6 | OFFICER ROBERT CLINE; | |
| 7 | COUNTY AGENT IAN BAXTER; COUNTY AGENT N. QUINTEROS; | 3. Battery |
| 8 | COUNTY AGENT SUPERVISOR | 4. False Imprisonment |
| 9 | BENITA JEMISON; COUNTY AGENT ABIGAIL JOSEPH; | 5. Negligence |
| 10 | COUNTY AGENT SUPERVISOR | 6. Intentional Infliction of Emotional Distress |
| 11 | ANTONIA TORRES; COUNTY AGENT BROOKE GUILD; | 7. Bane Act Violations |
| 12 | COUNTY AGENT SUPERVISOR | |
| 13 | ALFREDO GUARDADO; and DOES 1-50, | **DEMAND FOR A JURY TRIAL** |
| 14 | | |
| 15 | Defendants. | |
| 16 | | |

Plaintiffs hereby submit the following <u>First Amended</u> Complaint for violations of their Constitutional rights under 42 U.S.C. §1983 and the laws of the State of California.

## **INTRODUCTION**

1.     This case arises from an unconstitutional abuse of power by the County and City AGENTS who, without probable cause or exigent circumstances, seized and detained the minor plaintiffs (two and four year old boys) for almost a year from their parents' care based only the father's legal use of marijuana for medical purposes.    They did so despite the overwhelming evidence that the children were happy, health, and well cared for.

//

//

**FACTUAL ALLEGATIONS**

2.     In early 2011, Michael Lewis and Lauren Taylor were the proud parents of two boys:  two-year-old B.L. and four-year-old C.L.  They were living together as a family in Coronado, California.

3.     Michael Lewis grew up in Georgia, served in the military during the first Gulf War, was a certified Aviation Electronics Technician, had an Electronics Technology degree from DeVry Institute of Technology, had no violent criminal history, and was a doting and attentive father.  Lauren Taylor, the eldest of five sisters, was a woman with Native American blood who was studying web design at DeVry University.   The children knew their colors and numbers, were well nourished, and were never left alone.  <u>There has never been any evidence that they were ever physically or emotionally abused or neglected by their parents</u>.

4.     During his time in the military, Michael Lewis was exposed to unknown chemicals.  Since then, Michael suffered from chronic, painful, and debilitating migraines.  Mr. Lewis, upon the advice and recommendation of a physician, legally used marijuana to release the pressure of the migraines and allow him to live a normal life without debilitating pain.  Although he had marijuana in the home, the children were <u>not</u> exposed to marijuana or marijuana smoke.

5.     On August 5, 2011, police officers with the City of Coronado allegedly received an anonymous "tip" that the Lewis family was running a day care and smoking marijuana around children.

6.     That same day, the officers went to the Lewis family residence and Mr. Lewis allowed them to enter and take photographs.  Lauren and the children were not home at the time and there was no "daycare facility" being operated in the home.

7.     Although the officers found marijuana in the home, Michael Lewis had a medical marijuana recommendation and his use was legal.   Michael presented his medical marijuana recommendation to the officers.  The officer's

1  then left and wrote a report.  In their report, the officers identified marijuana as the

2  only purported "hazard" in the residence.  Neither Lewis nor Taylor were ever

3  criminally prosecuted for the possession and/or use of the marijuana.

4      8.    On August 8, 2011, Defendant COUNTY AGENTS IAN BAXTER

5  and N. QUINTEROS were working in the course and scope of their employment

6  for Defendant COUNTY OF SAN DIEGO ("COUNTY"), specifically with the

7  Health & Human Services Agency. They were accompanied by Defendant

8  Coronado Police Officers O'MALLEY and CLINE who were working as police

9  officers within the course and scope of their employment with Defendant CITY OF

10  CORONADO ("CITY"), and who were acting in joint collaboration with

11  COUNTY AGENTS BAXTER and QUINTEROS.

12      9.    Plaintiffs are informed and believe and on such basis alleged that any

13  reasonable police officer, including Defendants O'MALLEY and CLINE, would

14  have known that it was unlawful to seize and detain a child from the custody and

15  care of its parent absent a warrant or exigent circumstances.

16      10.    Plaintiff is informed and believes and on such basis alleges that when

17  Defendants O'MALLEY and CLINE arrived on the scene they searched the home

18  and examined the children to ascertain whether or not the children were in danger.

19  Upon such examination, on information and belief, the officers found the home to

20  be neat and clean and found the children to be appropriately dressed and in good

21  health. Plaintiff is further informed and believes and on such basis alleges that it

22  would have been readily apparent to any reasonable police officer facing similar

23  circumstances that the children were not in danger of suffering severe bodily injury

24  of any kind in the time it would have taken to obtain a warrant.

25      11.    Defendant COUNTY AGENTS IAN BAXTER and N. QUINTEROS

26  consulted with their supervisors and CITY AGENTS O'MALLEY and CLINE. On

27  information and belief, together BAXTER, QUINTEROS, O'MALLEY, and

28  CLINE reached a consensus and agreement to seize and detain four year old C.L.

and two year old B.L. from their home and their parents' care without first obtaining a warrant and in the absence of any exigent circumstances.  Then, acting on their agreed upon plan to seize and detain the children, O'MALLEY and CLINE provided armed support for BAXTER and QUINTEROS while the children were seized such that O'MALLEY and CLINE were integral participants in the unwarranted seizure and detention of the children. Once the children were seized, on information and belief, Defendants BAXTER and QUINTEROS then deposited the children at the Polinsky Center – an emergency shelter for allegedly abused and neglected children in San Diego County.  The children were there for approximately two weeks without their parents and were terrified.

12.    The only allegations against Lewis and Taylor were, essentially, that Lewis legally used marijuana, and police found marijuana in the home.

13.    Based on these facts, Defendant COUNTY AGENTS and CITY AGENTS seized C.L. and B.L. without a warrant based on allegations of "general neglect," where no exigency existed at all.  Specifically, there was no reasonable or articulable evidence to suggest that either child was in immediate danger of suffering severe bodily injury or death at the hands of either Lewis or Taylor in the time it would have taken to obtain a protective custody warrant.

14.    Nonetheless, even though they knew Michael Lewis' use of medical marijuana was completely legal in that he had obtained a medical marijuana recommendation after an evaluation from a licensed medical doctor, and that Lewis only used the marijuana outside the presence of the children and only for amelioration of pain, these Defendants seized and detained the children.

15.    After entering the Polinsky Center, the Center confirmed that the children were developmentally on target and there were no concerns for them (*i.e.*, no signs of physical abuse, emotional abuse, or other abuse).

16.    On the same day, in an effort retrieve their children from custody of Defendant COUNTY, Michael and Lauren expressed their willingness to have

5

1  their home checked for safety, submitted photographs showing a clean kitchen, got
2  a lockbox for medication and had a padlock where the marijuana was grown.  They
3  presented this evidence to Defendant COUNTY AGENT IAN BAXTER the same
4  day the children were seized.

5        17.     Despite this evidence, Defendant COUNTY AGENT IAN BAXTER
6  and N. QUINTEROS continued to detain C.L. and B.L. from their family home
7  and loving parents. Defendants COUNTY AGENT Supervisors JEMISON and
8  GUARDADO, after having conducted a detailed review of the matter, agreed with,
9  ratified, and condoned the conduct of Defendant COUNTY AGENTS BAXTER
10 and N. QUINTEROS.

11       18.     Defendant COUNTY AGENT IAN BAXTER filed a petition with the
12 juvenile court in the County of San Diego and on behalf of Defendant COUNTY.
13 The petition sets out a series of supporting "facts."

14       19.     The Petition is verified by Defendant BAXTER, and signed under
15 penalty of perjury.

16       20.     The "facts" set out in the petition are false, and BAXTER knew they
17 were false at the time he verified the petition under penalty of perjury and filed it
18 with the juvenile court.

19       21.     The false allegations mislead the juvenile court into believing the
20 children were in danger, when in fact they were not and BAXTER knew they were
21 not.

22       22.     Defendant COUNTY and COUNTY AGENT IAN BAXTER asserted
23 one count against Michael and Lauren.

24       23.     Defendant COUNTY AGENT IAN BAXTER mislead the court by
25 stating that he did not need to conduct any pre-placement preventive services
26 because of the "emergent nature" of the situation and asserted that Michael and
27 Lauren left their children "inadequately attended and inadequately supervised"
28 around the marijuana.  This statement was totally false, and BAXTER knew it, or,

6

1  even worse, simply did not care.

2      24.   At some point, Defendant COUNTY AGENT ABIGAIL JOSEPH

3  assumed Defendant BAXTER's role as the lead COUNTY agent on the case while

4  Defendant COUNTY AGENT ANTONIA TORRES assumed Supervisor

5  Defendant JEMISON's supervisory role. Upon information and belief, COUNTY

6  AGENT BROOKE GUILD acted in concert with Defendant JOSEPH.

7      25.   Despite the fact that Lewis' use of marijuana was totally legal under

8  California law, and despite the fact that all drug tests for Lauren Taylor were

9  negative and there were no signs of abuse or neglect of the children, Defendant

10  COUNTY AGENT JOSEPH continued to lie to the juvenile court by making false

11  statements calculated to lead the juvenile court to believe that Ms. Taylor used

12  marijuana and that such use posed a danger to the children.

13      26.   Defendants COUNTY AGENT JOSEPH and her supervisor

14  Defendant COUNTY AGENT TORRES acted in concert in providing knowingly

15  false information to the court.  Mr. Lewis' promptly provided all COUNTY

16  AGENT and CITY AGENT defendants, including Defendant COUNTY AGENT

17  JOSEPH, exculpatory information demonstrating that his use of marijuana was

18  legal and permissible, *i.e.*, that he received a doctor recommendation for the use of

19  marijuana from a Dr. Robert Robertson.

20      27.   Defendants JOSEPH and TORRES completely disregarded this

21  exculpatory evidence and made no effort to investigate it by, for example,

22  contacting the doctor or obtaining records from him.

23      28.   Instead, they lied to the court by stating that Mr. Lewis' use of

24  marijuana for his medical condition was not verified by his medical doctor.  They

25  assumed that Mr. Lewis had substance abuse issues and misrepresented this

26  information to the court.  They left the juvenile court with the false impression that

27  Lewis was a serious substance abuser, someone who forged records, a drug dealer,

28  and a serious danger to the children when all those inferences were untrue.

29.   Based on Defendant JOSEPH'S and TORRES' multiple false statements to the juvenile court, the children continued to be detained in County facilities and not at home with their loving parents. As a result, they were deprived of regular, open, and free contact and companionship of family and friends, including their parents.

30.   On February 3, 2012, Defendant COUNTY and the defendant COUNTY AGENT JOSEPH, with the approval of her supervisor, Defendant TORRES, filed amended petitions where they added a second count. Like with the initiating petition, the amended petitions contain specific "facts" which are intended to support the allegations of the petition. Defendant JOSEPH verified the amended petitions and signed, under penalty of perjury, attesting to the truth and veracity of the material allegations set out in the amended petitions.

31.   Defendant COUNTY AGENT JOSEPH, with the approval of her supervisor, Defendant TORRES, continued to detain Michael and Lauren's children and then create new equally false reasons for their continued detention. For example, she asserted falsely Michael had mental illnesses that posed a danger to the children.

32.   On February 6, 2012, the court, based on the knowingly false information provided by the defendant COUNTY AGENTS, declared C.L. and B.L. dependents of the juvenile court, continued their detention away from their parents, and placed them in some stranger's foster home. Michael timely appealed.

33.   On August 2, 2012, the Court of Appeal for the Fourth Appellate District, reversed the juvenile court's order. "[T]the record does not support a finding that [Mr. Lewis'] marijuana use or alleged mental illness had *any* negative impact on the children." *Cameron L. v. Michael L.*, 2012 Cal. App. Unpub. LEXIS 5726, 21 (Cal. App. 4th Dist. Aug. 2, 2012).

34.   The children remained out of their family home and the care of their parents until the family was reunited on August 7, 2012, nearly one year after

1  Defendants had removed them.

2      35.    In total, Michael, Lauren and their children were deprived of the care,
3  companionship, custody, and other protected familial interests for approximately
4  364 days.  As a direct result of the Defendants' misconduct, this family has
5  suffered severe harm.  This includes two episodes where their young children were
6  separated from their familiar surroundings and housed at the Polinsky Center,
7  several hundreds of hours in therapy and dealing with COUNTY AGENTS,
8  countless emotional challenges, numerous unfounded allegations, financial charges
9  for drug tests and supervised visitation, evictions (effectively rendered homeless)
10  and the concomitant breakage in the familial bonds that naturally arise between
11  good parents and their children.

12      36.    Throughout the ordeal, Lauren Taylor, C.L. and B.L. <u>never</u> tested
13  positive for any drug. Although Michael Lewis ingested marijuana for medicinal
14  purposes pursuant to a physician's recommendation, he never tested positive for
15  any other drugs.  Further, there was (1) <u>no</u> evidence of abuse or neglect by either
16  parent, (2) <u>no</u> evidence that Michael's marijuana use impaired his parenting skills
17  or judgment, and (3) <u>no</u> evidence that Michael Lewis acted inappropriately toward
18  his children at any time -- *ever*.

19      37.    To the contrary, there was ample evidence, which the COUNTY
20  AGENT Defendants suppressed from the juvenile court as part of their effort to
21  build a false case, that the children were intelligent, well nourished, lived without
22  abuse or neglect, and that the removal from their parents was significantly
23  detrimental to them.

24      38.    Defendant COUNTY and Defendant COUNTY AGENT JOSEPH
25  were informed that the children would often cry for more than an hour after they
26  were only allowed brief and fleeting visitations with their parents and they would
27  wake up crying for their parents at night and during naps – none of this exculpatory
28  evidence was ever disclosed to the Juvenile Court. Rather, the COUNTY AGENT

9

1  Defendants actively concealed the information from the court.

2      39.    At all times herein, supervisor Defendants JEMISON, TORRES,

3  GUARDADO, and supervisor DOES (1) personally and directly took the offensive

4  and tortuous actions in concert with their subordinate defendants and/or (2)

5  directed subordinates to commit the actions that violated plaintiffs' rights and/or

6  (3) set in motion a series of actions by their subordinates that they knew or

7  reasonably should have known would cause the subordinates to deprive the

8  plaintiffs of their rights and/or (4) knew or reasonably should have known that

9  their subordinates were engaging in these acts and that their conduct would deprive

10 the plaintiff of these rights and the defendant failed to act to prevent their

11 subordinates from engaging in such conduct.

12                          **JURISDICTION AND VENUE**

13     40.    This Court has jurisdiction to hear this case This Court has

14 jurisdiction of this case and these claims under California common law and federal

15 law. Venue in this Court is proper because the acts complained of occurred in San

16 Diego, California.  Further, Plaintiff is informed and believes that both named

17 parties have lived and/or conducted business in San Diego at all relevant times.

18                                **PARTIES**

19     41.    All Plaintiffs were and are, at all times mentioned herein, citizens of

20 the United States and legal residents of the State of California.

21     42.    Defendant COUNTY OF SAN DIEGO is a municipality within the

22 State of California and employs the individual defendants and other police officers

23 and unknown AGENTS referred to herein.  The individual defendants performed

24 all of the herein alleged acts for, and in the name of the Defendant COUNTY.

25     43.    Defendant CITY OF CORONADO is a municipality within the State

26 of California and employs the individual defendants and other police officers and

27 unknown AGENTS referred to herein.  The individual defendants performed all of

28 the herein alleged acts for, and in the name of the Defendant CITY.

44.   Defendants CORONADO POLICE OFFICER PATRICK O'MALLEY and CORONADO POLICE OFFICER ROBERT CLINE were, at all times herein mentioned, natural persons and employees of Defendant CITY (referred to collectively as "CITY AGENTS"). At all times acted herein the course and scope of their employment with Defendant CITY and under color of law. They are sued individually and in their official capacities.

45.   Defendants COUNTY AGENT IAN BAXTER, COUNTY AGENT N. QUINTEROS, COUNTY AGENT SUPERVISOR BENITA JEMISON, COUNTY AGENT ABIGAIL JOSEPH, COUNTY AGENT ANTONIA TORRES, COUNTY AGENT BROOKE GUILD, and COUNTY AGENT SUPERVISOR ALFREDO GUARDADO were, at all times herein mentioned, natural persons and employees of Defendant COUNTY, specifically with the Health & Humans Services Agency (referred to collectively as "COUNTY AGENTS"). At all times acted herein the course and scope of their employment with Defendant COUNTY and under color of law.  They are sued individually and in their official capacities.

46.   Plaintiffs are informed and believe, and on that basis allege, that at all times mentioned herein, the individually named defendants were and are residents of the County of San Diego, State of California.

47.   The true names or capacities, whether individual, corporate, associate or otherwise, of defendants named herein as DOES 1 through 50, are unknown to plaintiffs, and therefore -Plaintiffs sue said defendants by such fictitious names. The true names and capacities of DOES 1-50 are unknown to Plaintiffs, who therefore sue said fictitious names either as individuals or in their official capacities.  Plaintiffs are informed and believe, and based thereon allege, that each of the DOE defendants is legally responsible in some manner for the events and happenings herein alleged, and that the damages and injury to Plaintiffs were proximately caused by their conduct and the conduct of the named Defendants. All allegations in this complaint, which refer to the named Defendants, refer in like

1  manner to those defendants identified as Does 1-50, inclusive. Plaintiffs will
2  amend this complaint to allege the true names and capacities of the Doe
3  Defendants when they become known.

4      48.    Each of the acts of the individually named defendants and DOES 1
5  through 50 were performed by them by virtue of and under their authority as peace,
6  police, or law enforcement officers employed by Defendants CITY and/or
7  COUNTY, and under the color and pretense of the statutes, ordinances,
8  regulations, customs and usages of the State of California. Said defendants were
9  the servants, AGENTS, and employees of the Defendant CITY and/or COUNTY,
10  and in doing the acts hereinafter described, acted within the course and scope of
11  their employment. Their acts herein alleged are, therefore, imputed to Defendant
12  CITY and/or COUNTY.

13      49.    Plaintiffs timely served their respective Notices of Tort Claims on the
14  above identified Defendants as required under California Government Code
15  section 900, et seq. Plaintiffs' tort claims were denied, and Plaintiffs timely filed
16  suit.

**FIRST CAUSE OF ACTION**

**42 U.S.C. § 1983 – Deprivation of the 14th**

**Amendment Right to Parent/Child and Familial Relation**

**All Plaintiffs against Defendants O'MALLEY, CLINE, BAXTER,**

**QUINTEROS, JEMISON, JOSEPH, TORRES, GUILD, GUARDADO and**

**DOES 1-50**

23      50.    Plaintiffs incorporate, as if set forth in full, all preceding paragraphs
24  and allegations in this complaint.

25      51.    "[P]arents and children have a well-elaborated constitutional right to
26  live together without government interference." *Wallis v. Spencer,* 202 F.3d 1126,
27  1136 (9th Cir. 2000). Under the First, Fourth, Fifth and Fourteenth Amendments it
28  is unlawful to remove a child from the care, custody, and control of its parents

without probable cause, exigency, or a court order. This concept is, in fact, so well established that any reasonable COUNTY agent or CITY police officer facing similar circumstances as those present here would know that it was a violation of Plaintiffs' respective rights to seize and detain the children from the custody, care, and control of their parents without first obtaining a protective custody warrant or other similar court order.

52.    Defendants, and each of them and at all times relevant herein, an affirmative duty and obligation to not violate the protections guaranteed Plaintiffs under the United States Constitution, including the protection of parental rights, the right to privacy, family integrity and the right to familial relations.

53.    Defendants, and each of them and at all times herein, acting in the course and scope of their employment with the Defendants COUNTY and CITY, and thereby acting under color of law, jointly collaborated and acted together to deprive and did deprive LAUREN TAYLOR, MICHAEL LEWIS, C.L., and B.L. of their Constitutional rights their parental/child relationship and familial association under the Fourteenth Amendment to the United States Constitution.  As to City Defendants, the County of San Diego, and Defendants BAXTER and QUINTEROS, this includes, but is not limited to willfully seizing the children, C.L. and B.L., from their home and the loving care of their parents, LAUREN TAYLOR and MICHAEL LEWIS, without any legal basis whatsoever, without first obtaining a warrant, and in the absence of any exigency.

54.    COUNTY Defendants, and each of them and at all times herein, deprived Plaintiffs C.L. and B.L. of their liberty rights by extending the unlawful detention of the children from their family home and parents through acts of artifice and fraud, by communicating false information to the juvenile court, suppressing material exculpatory evidence from the juvenile court, and fabricating evidence, as well as committing specific acts of perjury, by signing and submitting charging documents when the offending COUNTY agent defendant knew, or had

1   reason to know, their sworn statements were untrue.

2       55.    In depriving plaintiffs of their Constitutional rights to their

3   parental/child relationship and familial association under the Fourteenth

4   Amendment to the United States Constitution, Defendants, and each of them,

5   directly and proximately caused past and future damages to plaintiffs as prayed for

6   herein, including mental anxiety, anguish and upset.

7       56.    The conduct alleged herein was done in deliberate or reckless

8   disregard of plaintiffs' constitutionally protected rights justifying the award of

9   exemplary damages against all non-entity/municipality Defendants in an amount

10  according to proof at the time of trial in order to deter them from engaging in

11  similar conduct and to make an example by way of monetary punishment.

12  Plaintiffs are also entitled to attorney fees and costs of suit herein.

13                          **SECOND CAUSE OF ACTION**

14                  **42 U.S.C. § 1983 – Unconstitutional Official**

15                  **Policy, Practice, or Custom (*Monell* Claim)**

16      **All Plaintiffs Against Defendants COUNTY OF SAN DIEGO and CITY OF**

17                               **CORONADO**

18      57.    Plaintiffs incorporate, as if set forth in full, all preceding paragraphs

19  and allegations in this complaint.

20      58.    Plaintiff alleges that Defendants, and each of them, have unlawful

21  customs, practices and habits of improper and inadequate hiring, training,

22  retention, discipline and supervision of its investigators, employees (including

23  employees of the office of the District Attorney) police officers and/or detectives,

24  including the officers mentioned herein, proximately causing the Constitutional

25  deprivations, injuries and damages suffered by plaintiffs and alleged herein. This

26  includes, but is not limited to willfully removing the C.L. and B.L. from their home

27  and the loving care of their parents, LAUREN TAYLOR and MICHAEL LEWIS,

28  without any legal basis whatsoever, communicating false information to the family

court, and holding the children after the parents presented clear evidence that any possible concern on behalf of the COUNTY AGENTS should have been alleviated.  Plaintiffs are informed and believe and thereon allege that on more than one occasion the CITY and COUNTY engaged in constitutionally improper conduct to such an extent that the conduct took on the force and effect of "policy" such that the official and unofficial customs, practices and policies as listed herein became the standard practice of Defendants, and each of them. These customs, practices, and/or policies include, but are not limited to the following:

a.   As to both the City and the County, the custom and practice of detaining and/or removing children from their family and homes without exigent circumstances (imminent danger of serious bodily injury), court order and/or consent;

b.   As to the County only, the custom and practice of removing and detaining children, and continuing to detain them for an unreasonable period after any alleged basis for detention is negated;

c.   As to the County only, the custom and practice of using trickery, duress, fabrication and/or false testimony and/or evidence, and in failing to disclose exculpatory evidence, in preparing and presenting reports and court documents to the Court, causing an interference with parental rights, including those as to familial relations;

d.   As to the City and County, by acting with deliberate indifference in implementing a policy of inadequate training and/or supervision, and/or by failing to train and/or supervise its officers, AGENTS, employees and state actors, in providing the constitutional protections guaranteed to individuals, including those under the Fourth and Fourteenth Amendments, when performing actions related to child abuse and dependency type proceedings;

e.   As to the County only, the practice of setting forth allegations in

Juvenile Dependency Petitions against parents claiming violations of WIC §300 regardless of whether or not reasonable and articulable evidence exists at the time to support the claims set out in the petition under penalty of perjury;

f.  As to the County only, the custom, policy, and/or practice of fraudulently charging parents with child abuse where none exists;

g.  As to the City, the custom, policy, and/or practice of making reports to Child Protective Services in all situations where marijuana is present in a family home regardless of the legality of the use/possession and regardless of whether there is any evidence of actual abuse or neglect of the child(ren);

h.  As to the City and County the custom, policy, and/or practice of seizing children from parents in all or most situations where marijuana is present in a family home regardless of the legality of the use/possession and regardless of whether there is any evidence of actual abuse or neglect of the child(ren).

59.  This list is not exhaustive due to the pending nature of discovery and the privileged and protected records of investigative and juvenile dependency type proceedings. Plaintiffs may seek leave to amend this pleading as more information becomes available.

60.  In depriving plaintiffs of their Constitutional rights to their parental/child relationship and familial association under the Fourteenth Amendment to the United States Constitution, Defendants, and each of them, directly and proximately caused past and future damages to plaintiffs as prayed for herein, including mental anxiety, anguish and upset.

//

//

//

# **THIRD CAUSE OF ACTION**

## **Battery**

## **Plaintiffs C.L. and B.L. Against All Defendants**

61.    Plaintiffs incorporate, as if set forth in full, all preceding paragraphs and allegations in this complaint.

62.    Defendants O'MALLEY and CLINE were integral participants in the unwarranted seizure of C.L. and B.L. In that they provided armed support for the County Social Workers to effectuate the seizure.

63.    Defendants CITY and COUNTY are liable for all of the state  law causes of action under *respondeat superior* for the actions of their respective CITY's or COUNTY's employee defendants as set forth in Government Code §815.2(a) and §820(a). Defendants respective employees were acting within the course and scope of their employment with Defendants at all times mentioned herein. Defendants CITY and COUNTY are liable for both the negligent and intentional actions of their respective employees which were committed within the course and scope of their employment. *Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202; *Lloyd v. County of Los Angeles,* (2009) 172 Cal.App.4th 320, 330; *Bradford v. California* (1973) 36 Cal.App.3d 16, 20; *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1127; *M.P. v. City of Sacramento* (2009) 177 Cal.App.4th 121, 129; *Ducey v. Argo Sales Co.,* (1979) 25 Cal. 3d 707, 721.

64.    Supervisory Defendants are liable because they committed the acts and omissions, or have ratified and confirmed the acts and omissions, set forth herein against Plaintiffs, acting with knowledge that Plaintiffs' emotional distress would thereby increase.  As such, their actions in ratifying and condoning said conduct were undertaken with a wanton and reckless disregard for the consequences to Plaintiffs. They did so by removing them or causing them to be removed from their safe and loving home with their parents when they were not being abused or neglected and there were no signs of abuse or neglect and when

they were physically restrained from being together as a family with their parents for 364 days.

65.   Defendants, and each of them, touched Plaintiffs C.L. and B.L. or caused them to be touched with the intent to harm or offend them.  Defendants, and each of them, were substantially certain that the injuries to Plaintiffs C.L. and B.L. would result from their conduct. They did so by removing them or causing them to be removed from their safe and loving home with their parents when they were not being abused or neglected and there were no signs of abuse or neglect and when they were physically restrained from being together as a family with their parents for 364 days.

66.   Plaintiffs C.L. and B.L. did not consent and were not capable of consenting to the touching.  Their parents did not consent to their removal or continued removal.  Plaintiffs C.L. and B.L. were harmed and offended by the conduct of Defendants, including but not limited to nightmares, anxiety, fear, frustration, and nightmares.

67.   As a direct and proximate cause of the negligence, Defendants, and each of them, directly and proximately caused Plaintiff's damages, including but not limited to emotional suffering and severe emotional distress.

68.   The conduct alleged herein was done in deliberately, recklessly, and intentionally without regard to the safety or rights of Plaintiffs C.L. and B.L., which justifies an award of exemplary and punitive damages against the COUNTY AGENT and police officer defendants as permitted by law and as according to proof at trial, due to the wrongful conduct of defendants as herein alleged.

69.   The conduct alleged herein was done in deliberate or reckless disregard of plaintiffs' constitutionally protected rights, which justifies an award of exemplary and punitive damages against the COUNTY AGENT and police officer defendants as permitted by law and as according to proof at trial, due to the wrongful conduct of defendants as herein alleged.

## FOURTH CAUSE OF ACTION

### False Imprisonment

### Plaintiffs C.L. and B.L. Against All Defendants

70.    Plaintiffs incorporate, as if set forth in full, all preceding paragraphs and allegations in this complaint

71.    Defendants CITY and COUNTY are liable for all of the state  law causes of action under *respondeat superior* for the actions of the COUNTY's employee defendants as set forth in Government Code §815.2(a) and §820(a). Defendant COUNTY's employees were acting within the course and scope of their employment with Defendant COUNTY at all times mentioned herein. Defendant COUNTY is liable for both the negligent and intentional actions of its employees which were committed within the course and scope of their employment. *Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202; *Lloyd v. County of Los Angeles,* (2009) 172 Cal.App.4th 320, 330; *Bradford v. California* (1973) 36 Cal.App.3d 16, 20; *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1127; *M.P. v. City of Sacramento* (2009) 177 Cal.App.4th 121, 129; *Ducey v. Argo Sales Co.,* (1979) 25 Cal. 3d 707, 721.

72.    Supervisory Defendants are liable because they committed the acts and omissions, or have ratified and confirmed the acts and omissions, set forth herein against Plaintiffs, acting with knowledge that Plaintiffs' emotional distress would thereby increase.  As such, their actions in ratifying and condoning said conduct were undertaken with a wanton and reckless disregard for the consequences to Plaintiffs. They did so by removing them or causing them to be removed from their safe and loving home with their parents when they were not being abused or neglected and there were no signs of abuse or neglect and when they were physically restrained from being together as a family with their parents for 364 days.

73.    Defendants, and each of them, intentionally and wrongfully detained,

confined and restrained Plaintiffs C.L. and B.L. Defendants, and each of them, intentionally deprived  Plaintiffs C.L. and B.L. of their freedom of movement by use of physical barriers, force, deceit and unreasonable duress.  The restraint, confinement and detention compelled Plaintiffs C.L. and B.L. to stay or go somewhere for some appreciable period of time.

74.   Defendants did so by removing Plaintiffs C.L. and B.L. or causing them to be forcibly removed from their safe and loving home with their parents when they were not being abused or neglected and there were no signs of abuse or neglect and when they were physically restrained from being together as a family with their parents for 364 days.

75.   The defendants, and each of them, did not have probable cause, exigent circumstances, or any other legal justification to remove the children from the custody of their loving parents and placing them in the Polinsky Children's Center, as well as, for their continued detention.

76.   Plaintiffs C.L. and B.L. did not consent (either knowingly or voluntarily) and were not capable of consenting to the touching.  Their parents did not consent to their removal or continued removal.  The confinement arose from a warrantless search and seizure, without exigent circumstances, and without discharging the duties imposed by Cal. Welf. & Inst. Code §306(b).

77.   As a direct and proximate cause of Defendants' actions, Defendants, and each of them, directly and proximately caused Plaintiff C.L. and B.L.'s damages, including but not limited to nightmares, anxiety, fear, frustration, nightmares, emotional suffering, and severe emotional distress.  The actions of Defendants, and each of them, were a substantial factor in causing Plaintiff C.L. and B.L.'s harm.

78.   The conduct alleged herein was done in deliberately, recklessly, and intentionally without regard to the safety or rights of Plaintiffs C.L. and B.L., which justifies an award of exemplary and punitive damages against the COUNTY

1  AGENT and police officer defendants as permitted by law and as according to

2  proof at trial, due to the wrongful conduct of defendants as herein alleged.

3  ## FIFTH CAUSE OF ACTION

4  ### Negligence

5  ### Plaintiffs C.L. and B.L. Against All Defendants

6  79.    Plaintiffs incorporate, as if set forth in full, all preceding paragraphs

7  and allegations in this complaint

8  80.    Defendants CITY and COUNTY are liable for all of the state  law

9  causes of action under *respondeat superior* for the actions of the COUNTY's

10  employee defendants as set forth in Government Code §815.2(a) and §820(a).

11  Defendant COUNTY's employees were acting within the course and scope of their

12  employment with Defendant COUNTY at all times mentioned herein. Defendant

13  COUNTY is liable for both the negligent and intentional actions of its employees

14  which were committed within the course and scope of their employment. *Mary M.*

15  *v. City of Los Angeles* (1991) 54 Cal.3d 202; *Lloyd v. County of Los Angeles,*

16  (2009) 172 Cal.App.4th 320, 330; *Bradford v. California* (1973) 36 Cal.App.3d 16,

17  20; *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1127; *M.P. v. City of*

18  *Sacramento* (2009) 177 Cal.App.4th 121, 129; *Ducey v. Argo Sales Co.,* (1979) 25

19  Cal. 3d 707, 721.

20  81.    Supervisory Defendants are liable because they committed the acts

21  and omissions, or have ratified and confirmed the acts and omissions, set forth

22  herein against Plaintiffs, acting with knowledge that Plaintiffs' emotional distress

23  would thereby increase.  As such, their actions in ratifying and condoning said

24  conduct were undertaken with a wanton and reckless disregard for the

25  consequences to Plaintiffs. They did so by removing them or causing them to be

26  removed from their safe and loving home with their parents when they were not

27  being abused or neglected and there were no signs of abuse or neglect and when

28  they were physically restrained from being together as a family with their parents

1   for 364 days.

2       82.    In perpetrating the acts described herein above, defendants, and each

3   of them, knew, or in the exercise of reasonable care and prudence, should have

4   known, that their actions likely would result in plaintiffs' suffering emotional

5   harm, anguish and distress.

6       83.    Defendants had a duty to Plaintiffs to avoid interfering with their

7   Constitutional rights under the Fourteenth Amendment to their parental

8   relationship and familial association. They further had a duty to obey all state, local

9   and federal laws and to avoid exceeding the scope of their authority in their

10  dealings with the Plaintiffs.

11      84.    Defendants did so by removing Plaintiffs C.L. and B.L. or causing

12  them to be forcibly removed from their safe and loving home with their parents

13  when they were not being abused or neglected and there were no signs of abuse or

14  neglect and when they were physically restrained from being together as a family

15  with their parents for 364 days.

16      85.    On August 8, 2011, Defendants assumed wardship of Plaintiffs C.L.

17  and B.L. and, therefore, owed plaintiffs as part of Plaintiffs' familial liberty

18  interest, a duty to act reasonably in minimizing the scope of intrusion into

19  Plaintiffs' familial privacy and liberty interest in the integrity of the family unit. A

20  preexisting relationship between County and Plaintiffs therefore existed at all

21  relevant times mentioned herein.

22      86.    As part of that relationship, and pursuant to Cal. Welf. & Inst. Code

23  §306(b), each of the COUNTY AGENT Defendants had the following statutory

24  duty:

25      Before taking a minor into custody, a COUNTY AGENT shall consider

26      whether the child can remain safely in his or her residence. The

27      consideration of whether the child can remain safely at home shall include,

        but not be limited to, the following factors:

28

(1) Whether there are any reasonable services available to the worker which, if provided to the minor's parent, guardian, caretaker, or to the minor, would eliminate the need to remove the minor from the custody of his or her parent, guardian, or caretaker.

(2) Whether a referral to public assistance pursuant to Chapter 2 (commencing with Section 11200) of Part 3, Chapter 7 (commencing with Section 14000) of Part 3, Chapter 1 (commencing with Section 17000) of Part 5, and Chapter 10 (commencing with Section 18900) of Part 6, of Division 9 would eliminate the need to take temporary custody of the minor. If those services are available they shall be utilized.

(3) Whether a nonoffending caretaker can provide for and protect the child from abuse and neglect and whether the alleged perpetrator voluntarily agrees to withdraw from the residence, withdraws from the residence, and is likely to remain withdrawn from the residence.

87.     Defendant COUNTY AGENTS also had a statutory duty under Cal. Govt. Code §820.21 to refrain from committing with malice: (1) perjury; (2) fabrication of evidence; (3) failure to disclose known exculpatory evidence; and (4) obtaining testimony by duress.

88.     County and the defendant COUNTY AGENTS breached their duties of care by failing to consider whether but not limited to, failing to consider whether Plaintiffs C.L. and B.L. could, with the provision of reasonable services, remain safely with their parents, wrongfully seizing Plaintiffs C.L. and B.L., continuing to detain Plaintiffs C.L. and B.L. after any alleged basis for detention had been negated, procuring of false testimony and fabricated evidence including whether Plaintiff Michael Lewis had a medical recommendation for the medicinal use of marijuana, and failing to disclose exculpatory evidence in reports and documents to the Court.

89.     Had the abovementioned acts been performed by private citizens, the acts would not only have been criminal, but would entitle Plaintiffs to bring claims against each such persons for, among others, abduction of a child, invasion of

1  privacy, intentional infliction of emotional distress, negligent infliction of
2  emotional distress, and false imprisonment.

3  90.  As the direct and proximate result of the COUNTY AGENT
4  defendants negligent conduct, Plaintiffs have suffered extreme emotional and
5  physical distress, including but not limited to fright, nervousness, sleeplessness,
6  anxiety, worry, mortification, shock, humiliation, and indignity, to an extent and in
7  an amount subject to proof at trial. Nobody, including Plaintiffs, could reasonably
8  be expected to endure the types of affront inflicted upon Plaintiffs, without
9  sustaining the type of damages herein alleged. Statutes, including, without
10 limitation, Cal. Welf. & Inst. Code §306(b) and Cal. Govt. Code §820.21, were
11 specifically enacted to avoid the types of harm suffered by Plaintiffs as mentioned
12 herein.

13 91.  Plaintiffs are informed and believe and thereon allege that COUNTY
14 AGENTS acted knowingly and willfully, with malice and oppression, and with the
15 intent to harm Plaintiffs. Based on the nature of the offenses, and types of recovery
16 Plaintiffs would be entitled to against a private party committing the same acts,
17 recovery of punitive damages is warranted, all to an extent and in an amount
18 subject to proof at trial.

19 92.  In performing the acts and omissions alleged herein above, all
20 Defendants breached this duty owed to Plaintiffs.  Said breach was a direct and
21 proximate cause of the injuries and damages suffered by Plaintiffs, including the
22 causing Plaintiffs to suffer significant emotional distress, fear, shock, grief, anxiety
23 and other emotional upset.

24 93.  The acts of confirming and ratifying the conduct of subordinate
25 officers defendants by superior officer Defendants unknown to Plaintiffs at this
26 time, and each of them, was undertaken with the actual or constructive knowledge
27 of the falsity of the statements and the intentional conduct against plaintiff's and
28 was done with a wonton and reckless disregard for the consequences to plaintiff.

94.     As a direct and proximate result of the actions of all Defendants, and each of them, Plaintiff did sustain the damages alleged herein, including, but not limited to, economic damages and emotional distress.

## SIXTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### Plaintiffs C.L. and B.L. Against All Defendants

95.     Plaintiffs incorporate, as if set forth in full, all preceding paragraphs and allegations in this complaint

96.     Defendant COUNTY is liable for all of the state  law causes of action under *respondeat superior* for the actions of the COUNTY's employee defendants as set forth in Government Code §815.2(a) and §820(a). Defendant COUNTY's employees were acting within the course and scope of their employment with Defendant COUNTY at all times mentioned herein. Defendant COUNTY is liable for both the negligent and intentional actions of its employees which were committed within the course and scope of their employment.  *Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202; *Lloyd v. County of Los Angeles,* (2009) 172 Cal.App.4th 320, 330; *Bradford v. California* (1973) 36 Cal.App.3d 16, 20; *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1127; *M.P. v. City of Sacramento* (2009) 177 Cal.App.4th 121, 129; *Ducey v. Argo Sales Co.,* (1979) 25 Cal. 3d 707, 721.

97.     On the same dates and times set forth above, Defendants, while in the course and scope of their employment and thereby under color of law, committed the acts and omissions alleged herein.  All of the acts and omissions alleged herein were performed while the individual Defendants were acting within the course and scope of their employment and thereby under color of law, committed the acts and omissions alleged herein.

98.     The conduct of Defendants, and each of them, was intentional, outrageous, unprivileged, and malicious and was committed for the purpose of

causing plaintiff to suffer, or with the knowledge that Plaintiff was certain, to suffer humiliation, and severe mental anguish and emotional and distress.  Their conduct was so extreme that it goes beyond all possible bound of decency and a reasonable person would regard the conduct intolerable in a civilized community. Their actions were rose far above any trivial indignity, annoyance, hurt feeling, or bad manners.

99.    Supervisory Defendants are liable because they committed the acts and omissions, or have ratified and confirmed the acts and omissions, set forth herein against Plaintiffs, acting with knowledge that Plaintiffs' emotional distress would thereby increase.  As such, their actions in ratifying and condoning said conduct were undertaken with a wanton and reckless disregard for the consequences to Plaintiffs. They did so by removing them or causing them to be removed from their safe and loving home with their parents when they were not being abused or neglected and there were no signs of abuse or neglect and when they were physically restrained from being together as a family with their parents for 364 days.

100.  As a further proximate result of Defendants' acts as herein alleged, Plaintiffs suffered severe emotional distress, and were injured in mind and body. Each and every plaintiff suffered emotional distress that was not mild or brief, but instead was substantial and long last so that no reasonable person in a civilized society could bear it.  Given the severity of the separation as a family, their damages continue and will continue into the future.

101.  As a direct and proximate result of the actions of all Defendants, and each of them, Plaintiff did sustain the damages alleged herein, including, but not limited to, economic damages and emotional distress.

102.  In doing the so, Defendants, and each of them, acted willfully and with a callous and reckless disregard for the rights, safety and health of Plaintiffs. The acts of each of the Defendants were in violation of the laws of the United

States of America and the State of California and constitute malice, oppression, and fraud, thus entitling Plaintiff to punitive and exemplary damages against defendants in an amount according to proof at the time of trial.

## SEVENTH CAUSE OF ACTION

### All Plaintiffs Against All Defendants

### Violation of Plaintiffs' Rights Under California Civil Code §52.1, et seq. (*Bane Act*)

103.   Plaintiffs incorporate, as if set forth in full, all preceding paragraphs and allegations in this complaint

104.   Defendant COUNTY is liable for all of the state  law causes of action under *respondeat superior* for the actions of the COUNTY's employee defendants as set forth in Government Code §815.2(a) and §820(a). Defendant COUNTY's employees were acting within the course and scope of their employment with Defendant COUNTY at all times mentioned herein. Defendant COUNTY is liable for both the negligent and intentional actions of its employees which were committed within the course and scope of their employment. *Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202; *Lloyd v. County of Los Angeles,* (2009) 172 Cal.App.4th 320, 330; *Bradford v. California* (1973) 36 Cal.App.3d 16, 20; *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1127; *M.P. v. City of Sacramento* (2009) 177 Cal.App.4th 121, 129; *Ducey v. Argo Sales Co.,* (1979) 25 Cal. 3d 707, 721.

105.   The Tom Bane Civil Rights Act, Stats. 1987, ch. 1277, § 1, p. 4544, as codified in California Civil Code §52.1, authorizes a private cause of action for damages and equitable relief against any person who, "whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state ... "  Civ.

Code, §52.1, subd. (a).

106.   The defendant COUNTY AGENTS and police officers committed such wrongful actions by wrongfully seizing Plaintiffs C.L. and B.L. without a warrant, probable cause, or exigent circumstances.  Their further wrongful actions include the continued wrongful detention of the children after any alleged basis for detention had been negated, the procuring of false testimony, fabrication of evidence, and the refusal to disclose exculpatory evidence in preparing and presenting reports and documents to the Court in relation to dependency proceedings all in violation of the right to familial association and privacy arising under the Fourteenth Amendment.

107.   The individual defendants acted within in the course and scope of their employment and thereby under color of law when they committed the acts and omissions alleged herein. Supervisory Defendants are liable because they committed the acts and omissions, or have ratified and confirmed the acts and omissions, set forth herein against plaintiffs, acting with knowledge that plaintiff's emotional distress would thereby increase.

108.   These acts, and the others alleged herein above, prevented Plaintiffs from exercising and enjoying the legal rights secured by the Constitutions of the United States and the State of California and the statutory laws and ordinances of the United States and the State of California.

109.   The rights violated by the public employees mentioned herein, and each of them, are protected by California Civil Code sections 43, 49, 51, and 52.1, which entitle Plaintiffs to compensatory and punitive damages, injunctive relief, statutory civil penalty (where applicable) and attorney's fees, as provided for by the laws and the Constitution of the State of California, and are requested herein.

110.   As a direct and proximate cause of the negligence, Defendants, and each of them, directly and proximately caused Plaintiffs' damages, including but not limited to nightmares, anxiety, fear, frustration, and nightmares.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby respectfully demand a trial by jury.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for relief and judgment against Defendants as follows:

### As to All Defendants

(1)   General, special and compensatory damages for emotional pain and suffering;

(2)   Incidental damages;

(3)   Consequential damages;

(4)   Attorney's fees to the extent allowable, including but not limited to 42 U.S.C. § 1988, California Civil Code § 52.1, and any other basis allowed by law;

(5)   Costs of litigation;

(6)   Interest according to the highest rate provided by law; and

(7)   Such further relief as the Court deems just and proper.

### As to All Individual (Non-Entity) Defendants and DOES 1-20 Only

(8)   Punitive and exemplary damages, including but not limited to, intentional, maliciously and/or fraudulent conduct, as allowed by law – including but not limited to *Morgan v. Woessner,* 997 F.2d 1244, 1255 (9th Cir.1993) and Cal. Code of Civ. Proc. §3294.

//
//
//
//
//
//
//

29

1   SINGLETON LAW FIRM, APC
    LAW OFFICES OF SHAWN A. MCMILLAN,
2   APC
    LAW OFFICES OF LANCE ROGERS, APC
3

4

5   Dated:  August 24, 2014        By:  *Gerald Singleton*

6   _____

7        GERALD SINGLETON
        BRODY A. McBRIDE
8        SHAWN A. MCMILLAN
        LANCE ROGERS
9        Attorneys for Plaintiffs

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

First Amended Complaint for Damages and Violation of Civil Rights