# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL LEWIS, LAUREN TAYLOR, C.L., a minor, and B.L., a minor, by and through their guardian ad litem,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO, COUNTY AGENT IAN BAXTER, COUNTY AGENT N. QUINTEROS, COUNTY AGENT SUPERVISOR BENITA JEMISON, COUNTY AGENT ABIGAIL JOSEPH, COUNTY AGENT SUPERVISOR ANTONIA TORRES, COUNTY AGENT SUPERVISOR ALFREDO GUARDADO, COUNTY AGENT BROOKE GUILD, and DOES 1-50,<br><br>Defendants. | Case No.: 3:13-cv-02818-H-JMA<br><br>**ORDER GRANTING IN PART, DENYING IN PART, DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. No. 109] |

On August 7, 2013, Plaintiffs filed a suit in California Superior Court against the County of San Diego ("County") and individual social workers (collectively "Defendants"), claiming Defendants violated their constitutional rights, as well as various state laws. (See Doc. No. 1.) On November 27, 2013, this action was removed to

Federal Court.  (Id.)  On January 27, 2017, Defendants filed a motion for summary judgment.  (Doc. No. 109.)  Defendants Joseph, Guild, Torres, and Guardado move for summary judgment as to all claims against them on the grounds they are entitled to immunity for their actions in this case.  (Id. at 2.)  Defendant County of San Diego moves for summary judgment on Plaintiffs' claim the County's policies and practices violated their constitutional rights.  (Id.)  Finally, all Defendants move for summary judgment as to Plaintiffs' Bane Act claims, which Plaintiffs do not oppose.  (Id.)  Plaintiffs opposed the motion on February 15, 2017.  (Doc. No. 136.)  Defendants replied on February 22, 2017.  (Doc. No. 147.)  On March 1, 2017, the Court heard arguments on the matter.  (Doc. No. 153.)  Plaintiffs Lauren Taylor, C.L., and B.L. were represented by Attorneys Robert Powell and Sarah Marinho.  Plaintiff Michael Lewis was represented by Attorney Stephen Allen King.  (Id.)  Defendants were represented by Attorneys David Brodie and Erica Rocio Cortez.  (Id.)

## BACKGROUND

This case arises from the warrantless removal of minor Plaintiffs C.L., age four, and B.L., age two, by the County of San Diego Health and Human Services Agency ("HHSA").  C.L. and B.L., along with their parents Michael Lewis and Lauren Taylor (collectively "Plaintiffs"), sued Defendants alleging the removal and subsequent familial separation violated their constitutional rights, as well as various state laws.  (Doc. No. 1.)  The present motion does not focus on the circumstances of the warrantless removal, as the parties have agreed that questions of fact remain and the matter is proceeding to trial.  Rather, the focus of the arguments concern Defendants' conduct following the Juvenile Court order detaining C.L. and B.L., the Monell claim against the County of San Diego, and the state law Bane Act claims.

By way of background, on August 8, 2011, Defendants Baxter and Quinteros, social workers with HHSA, visited Plaintiffs' home on referral from the Coronado Police Department, who had previously visited the home and observed marijuana and marijuana paraphernalia.  (Doc. No. 138-1 at 4.)  During their visit, Defendants Baxter and

Quinteros also encountered marijuana and marijuana paraphernalia. In his petition to the Juvenile Court, Defendant Baxter wrote:

> Upon entering the home, there was a strong smell or marijuana. In the kitchen, on the counter, there were materials used to manufacture marijuana hash. There was a CO2 tank, a scale, and an extraction tank. In the freezer there was a large ice cream tub containing marijuana buds and in the door of the freezer there were chemicals and other grocery bags containing marijuana leaves. In the master bathroom there were marijuana buds, an aerosol can of butane fuel, a glass pipe, and a butane torch. In the roommate's room, in the closet, there were eight marijuana plants, approximately two feet tall, growing under a lighting system. All of the drugs and paraphernalia are easily accessible to the minors.

(Doc. No. 138-1 at 4.)

Plaintiffs Michael Lewis and Lauren Taylor told Defendants Baxter and Quinteros they never used marijuana around their children and the children did not have access to the room where the marijuana was growing. (Id. at 5.) The children, however, said otherwise. C.L. told Defendant Baxter that:

> [H]e had seen mom and dad smoke inside and that it looks like a "bomb, but it's not." He said that he went into Nick's room yesterday and climbed on the bed. He said that he and Dominic had been on Nick's bed and his dad was poking them with keys. [C.L.] stated he and his mom eat broccoli and that his dad eats "stinky broccoli" and it "makes his breath smell bad."

(Id.) Dominic, another child not involved in this case, told Defendant Baxter he had seen Plaintiff Lewis smoke marijuana, had played in the room where the marijuana was growing, and was able to reach the freezer where the marijuana was stored by standing on his toes. (Id.) In fact, Dominic said he often accessed the freezer to get ice cream. (Id. at 8-9.) Based on their observations at the home, Defendants Baxter and Quinteros decided to remove the children.

On August 11, 2011, the Juvenile Court held a detention hearing. (Doc. No. 138-4.) At the hearing, Defendant Baxter filed a Detention Report setting forth his observations from the home and recommending that C.L. and B.L. should remain detained in a licensed foster home with HHSA having the discretion to place the children with an appropriate relative. (Doc. No. 138-1 at 2.) Furthermore, Defendant Baxter recommended the parents be allowed supervised visits and the parents be referred to drug treatment assessment. (Id.) The parents, as well as the minors, also appeared at the Detention Hearing and were represented by their own counsel. (Doc. No. 138-4 at 2.) Counsel for Plaintiff Taylor presented photographic evidence showing the parents had cleaned their home since the children were removed and argued the children should be returned. (Id.) Counsel for C.L. and B.L., acting in the best interest of the minor children, advocated the children be removed from their parents. (Doc. No. 120-3 at 13-14.)

After hearing the evidence, the Juvenile Court found that "[c]ontinued care in the home of the parent(s)/guardian(s) is contrary to the child[ren's] welfare." (Doc. No. 138-4 at 2.) The Court also found that:

> [D]etention of the minor is necessary because of a substantial danger to the physical health of the minor and there is no reasonable means to protect the minor's physical or emotional health without removing the minor from the parent's physical custody at this time.

(Id.) Finally, the Court found that reasonable efforts had been made to prevent removal of the children but there were no additional services available that would prevent the need for further detention. (Id.) Based on the findings, the Court ordered the children detained with supervised visitation rights. (Id. at 3.) The Court also referred Plaintiff Michael Lewis for substance abuse assessment. (Id.)

After the Court issued the August 11, 2011 detention order, Defendants Joseph and Guild were the HHSA social workers managing C.L. and B.L.'s care. (Doc. No. 109-3 ¶¶ 3-5.) Defendants Guardado and Torres supervised Defendants Joseph and Guild. (Id.

¶ 6.) Defendant Joseph filed various documents with the Juvenile Court, updating the Court as to C.L. and B.L.'s condition, as well as making recommendations as to their care.[1]  (E.g., Doc. No. 138-6.)  Throughout the time Defendants Joseph, Guild, Torres, and Guardado managed C.L. and B.L.'s case, they were acting pursuant to the Juvenile Court's order detaining the children.  During this time, Plaintiffs were represented by counsel and actively involved in proceedings before the Juvenile Court.  Plaintiffs Lewis and Taylor continued to oppose the children's detention but C.L. and B.L.'s counsel, acting in the best interest of the minors, repeatedly joined the HHSA's position in advocating in favor of detention.  (E.g., Doc. No. 120-3 at 13-14; Doc. No. 154.)

Plaintiff Lewis appealed the Juvenile Court's decision to detain C.L. and B.L.  In re Cameron L., D061636 (Cal. App. 4th August 2, 2012).  On appeal, C.L. and B.L.'s counsel joined the County's brief in favor of upholding the Juvenile Court's order.  (Doc. No. 154.)  On August 2, 2012, the California Court of Appeal reversed the Juvenile Court, ordering the children placed back in their parents' care.  In re Cameron L., D061636 (Cal. App. 4th August 2, 2012); (Doc. No. 136-3).  Despite reversing the Juvenile Court, the Court of Appeal acknowledged that marijuana was present in Plaintiffs' home and was accessible to the children at the time of removal.  (Id. at 12) ("we cannot fault the Agency for acting in an abundance of caution by removing the children from the home based on the existence of marijuana and marijuana paraphernalia within reach of the children").  The Court of Appeal also noted Plaintiff Lewis's threatening behavior and the fact he did not contest that "he suffered from PTSD or . . . that a restraining order had been issued against him for the protection of a social worker." (Id. at 9.)  Reviewing the entire record, the Court of Appeal determined detention was unnecessary because "there were less drastic measures available to protect the children"

---

[1] Defendant Guild was brought onto the case much later and never actually filed any reports with the Court.  (Doc. No. 109-6 ¶ 4.)

and the evidence did not support a finding that the alleged drug use or mental illness negatively impacted the children. (Id. at 15.)

## ANALYSIS

Defendants' motion for summary judgment is limited to certain claims and bases for liability. (Doc. No. 109 at 2.) Defendant County of San Diego moves to dismiss Plaintiffs' Monell claim. Defendants also seek to dismiss Plaintiffs' state-law claims under the California Bane Act. Finally, Defendants Joseph, Guild, Torres, and Guardado move for summary judgment as to all Plaintiffs' claims because they were not involved in the warrantless removal and argue they are entitled to immunity for their actions in this matter. The Court addresses each issue in turn.

### I. LEGAL STANDARD

Summary judgment is proper when a moving party shows there is no genuine dispute of material fact and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). There is no genuine dispute if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The moving party bears the initial burden of producing evidence showing they are entitled to summary judgment. Celotex Corp., 477 U.S. at 330. If the moving party satisfies their initial burden, then the burden shifts to the nonmoving party to introduce evidence showing there is a genuine dispute of material fact. Id. at 331. To satisfy its burden, the non-moving party "may not rest upon mere allegations or denials of his pleadings." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Rather, the nonmoving party "must present affirmative evidence . . . from which a jury might return a verdict in his favor." Id. Facts and inferences are to be viewed in the light most favorable to the non-moving party. U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962).

///
///

## II. MONELL CLAIM AGAINST COUNTY OF SAN DIEGO

Local governmental entities such as the County can be sued under § 1983 when their policies or practices caused a person's rights to be violated. Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658 (1978). Defendants moved for summary judgment on Plaintiffs' Monell claim, arguing it is not the County's policy or practice to remove children from the home absent exigent circumstances. (Doc. No. 109-1 at 7-8.) Defendants have met their initial burden under Celotex Corp., 477 U.S. at 330, through declarations of County employees stating the County's policy was only to remove children if they "had a court order, consent, or exigency." (Doc. No. 109-8 ¶ 11) (see also Doc. Nos. 109-9, 109-10). Thus, the burden shifts to Plaintiffs to bring forth evidence sufficient to raise a material question of fact. Celotex Corp., 477 U.S. at 330. Plaintiffs have done so.

Plaintiffs produced a written County of San Diego policy entitled "Drug Endangered Children (DEC) Protocol" ("DEC Protocol") that they claim instructs County employees to unconstitutionally remove children from their homes. (Doc. No. 136-23.) In the first paragraph, the DEC Protocol notes that:

> When raised in homes where parents are using drugs, the children, especially those under the age of seven, may be chronically exposed to methamphetamine and other narcotics. Additionally, these children are socialized among criminal elements that surround the drug lifestyle, and as a result of their immersion in that environment they suffer long-term physical, social, and psychological detriment.

(Id. at 1.) Because of this danger to children, the DEC Protocol attempts to outline how County employees should address situations involving drugs and children. The DEC Protocol states that "[i]f a child is in a home where drugs and/or paraphernalia have been found, and they were accessible to the child/ren . . .they should be brought into custody." (Id. at 6.) Similarly, the DEC Protocol defines all children found in settings involving the use of drugs as DEC Level II and provides that these children should "[c]omplete a urine

toxicology screen . . . after their recovery from the scene." (Id. at 8.)  Plaintiffs argue that the DEC Protocol could be interpreted as requiring that all DEC Level II children be taken into County custody.  In addition to the protocol, Plaintiffs have offered evidence that HHSA social workers were trained to follow the DEC Protocol and regularly consulted it when making decisions.  (Doc. No. 136-17 at 4-9.)

Plaintiffs argue that this evidence, viewed in the light most favorable to them, could allow a reasonable jury to find the County's policy caused social workers to remove children per se when marijuana was present in the home.  Plaintiffs argue that such a per se rule would be improper under the Ninth Circuit precedent in Wallis v. Spencer, 202 F.3d 1126 (9th Cir. 2000), because the analysis requires additional considerations.  Id. at 1138 (warrantless removal only proper if there is "reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury"); see also In re Alexis E., 171 Cal.App.4th 438, 452 (2009) ("it is true that the mere use of marijuana by a parent will not support a finding of risk to minors"); accord In re Destiny S., 210 Cal.App.4th 999, 1003 (2012).  Defendants contend that Plaintiffs have taken portions of the DEC Protocol out of context and that social workers must still conduct a full investigation to determine whether removal is necessary and appropriate.  (Doc. No. 147 at 11.)  In support of their position, Defendants have offered declarations from HHSA employees stating that, at the time of C.L. and B.L.'s removal, the County's policies did not instruct social workers to remove children from the care of their parents solely due to the presence of marijuana in the home and the presence of drugs was only one factor in the social workers' decision.  (Doc. Nos. 109-9 ¶ 3, 109-8 ¶ 9.)  Given the conflicting positions of the parties and the factual disputes about the County's policies and practices on removing children when drugs are present, the Court denies Defendants' motion for summary judgment on the Monell claim.

///

///

## III. **BANE ACT CLAIMS**

Defendants argue they are entitled to summary judgment on Plaintiffs' claims under the Bane Act, Cal. Civ. Code § 52.1 et seq., because Plaintiffs failed to timely present a written claim for damages. (Doc. No. 109-1 at 6.) Plaintiffs have not opposed this portion of Defendants' motion and do not intend to pursue any Bane Act claims at trial. (Doc. No. 136 at 5.) Accordingly, the Court grants Defendants summary judgment as to Plaintiffs' claims under the Bane Act.

## IV. **QUASI-JUDICIAL IMMUNITY**

Defendants Joseph, Torres, Guild, and Guardado (the "Dependency Social Workers") were not involved in the August 8, 2011 warrantless removal of C.L. and B.L. (Doc. No. 109-3 ¶ 3; Doc. No. 109-4 ¶ 3; Doc. No. 109-5 ¶ 3; Doc. No. 109-6 ¶ 3.) The Dependency Social Workers only became involved with the case after the Juvenile Court issued its Detention Hearing order, removing B.L. and C.L. from their parents' care and placing them under the protection of the state. (Id.) Defendants Joseph and Guild were the social workers assigned to manage the children's case. (Doc. No. 109-3 ¶¶ 3-5.) Defendants Guardado and Torres supervised Defendants Joseph and Guild. (Id. ¶ 6.) Defendants argue their actions are entitled to quasi-judicial immunity because they were acting pursuant to a court order and in the role of an advocate of the state. (Doc. No. 109 at 4-6.) Plaintiffs respond that the Dependency Social Workers are not entitled to absolute immunity.

Social workers are entitled to absolute immunity for actions taken in a quasi-judicial or quasi-prosecutorial role. Miller v. Gammie, 335 F.3d 889, 898-99 (9th Cir. 2003) (en banc). Such actions include initiating dependency proceedings, acting pursuant to a court order, and acting as a generic advocate of the state. Beltran v. Santa Clara Cnty., 514 F.3d 906, 908 (9th Cir. 2008); Hardwick, 844 F.3d at 1115; Mabe v. San Bernardino Cnty., Dept. of Soc. Servs., 237 F.3d 1101, 1109 (9th Cir. 2001); Meyers v. Contra Costa Cnty. Dept. of Soc. Servs., 812 F.2d 1154, 1157 (9th Cir. 1987). In these situations, there are sufficient "safeguards built into the judicial process that tend to

reduce the need for private damage actions as a means of controlling unconstitutional conduct." Meyers, 812 F.2d at 1157. Only when social workers act outside of their quasi-judicial or quasi-prosecutorial role can they be held liable. E.g., Beltran, 514 F.3d at 908 (no immunity for fabricating evidence or making false statements in an affidavit); Mabe, 237 F.3d at 1109 (same); Hardwick, 844 F.3d at 1115 (no immunity for "egregious acts of misconduct").

Once assigned to C.L. and B.L.'s case, the Dependency Social Workers duties included effectuating the Juvenile Court's orders. (E.g., Doc. No. 109-3 at 2.) At the August 11, 2011 Detention Hearing, the Juvenile Court ordered C.L. and B.L. to be detained at the Polinsky Child Center and the parents be allowed supervised visitations. (Doc. No. 138-4 at 3.) In order to administer the Juvenile Court's order, the Dependency Social Workers regularly communicated with C.L. and B.L.'s parents, coordinated services for the family, and followed up with those service providers. (Doc. No. 109-3 ¶ 4; Doc. No. 109-6 ¶¶ 3-4.) This is protected because the social workers were effectuating the Court's orders. Mabe, 237 F.3d at 1109 (social workers enjoy absolute immunity when "making post-adjudication decisions pursuant to a valid court order") (internal quotation marks omitted); see also Beltran, 514 F.3d at 908 (immunity available for "functions that are critical to the judicial process itself"); but see Hardwick, 844 F.3d at 1115 (abrogating immunity where there were "egregious acts of misconduct").

The Dependency Social Worker's also submitted petitions with the Juvenile Court, informing the court as to developments in the case and making recommendations on behalf of the HHSA. (Doc. No. 109-3 ¶ 4; Doc. No. 109-6 ¶¶ 3-4.) For example, on February 6, 2012, Defendant Joseph filed an amended petition listing additional concerns regarding Plaintiff Lewis's alleged PTSD and threatening behavior. (Doc. No. 138-6 at 4.) Defendant Joseph informed the court that Plaintiff Lewis claimed to have "severe PTSD which has not been verified with medical documentation" and Plaintiff Lewis said the PTSD was preventing him from stopping his marijuana use, as well as causing him to

have "difficulty sleeping and controlling his thoughts." (Id.)  Plaintiff Lewis and his counsel acknowledged Lewis's PTSD during the August 11, 2011 Detention Hearing:

> THE COURT:  Mr. Cruz, what was the basis for the father's medical marijuana?
>
> MR. CRUZ:  PTSD as well as migraines.
>
> THE FATHER [LEWIS]:  Extreme.

(Doc. No. 156 at 8:18-21.).

In addition to the PTSD, Defendant Joseph reported that Plaintiff Lewis "presented with threatening behavior including verbal threats towards [a social worker] . . . [and a] Retraining Order was ordered by the Court to address the concerns." (Id.)  Indeed, on August 23, 2011, the Superior Court issued a restraining order against Plaintiff Lewis because of his threats to Defendant Baxter.  (Doc. No. 156 at 22.)  Defendant Joseph also reported that C.L. and B.L.'s paternal grandmother and maternal aunt felt threatened by Plaintiff Lewis's behavior.  (Doc. No. 138-6 at 4.)  For example, C.L. and B.L.'s paternal grandmother told Defendant Joseph she came to visit the children but had to leave "prematurely and abruptly after she confronted Mr. Lewis" about his drug use.  (Id.)  On account of these observations, Defendant Joseph maintained that C.L. and B.L. should be detained.  (Id. 2, 4, 8-10.)  This behavior qualifies as quasi-prosecutorial because it "contributes as an advocate to an informed judgment by an impartial decision maker. Caldwell v. LeFaver, 928 F.2d 331, 333 (9th Cir. 1991).  Or put another way, it involves "presenting the state's case as a generic advocate.[2]"  Hardwick, 844 F.3d at 1115; see

---

[2] Even though the Court concludes the social workers are entitled to immunity for their actions in this case, it rejects Defendants' argument that social workers are entitled to absolute immunity for all of their actions once dependency proceedings have commenced. (E.g., Doc. No. 147 at 6-7.)  But this goes too far.  The Supreme Court and the Ninth Circuit have instructed courts to focus on the specific functions an official is undertaking to determine whether immunity applies.  Kalina v. Fletcher, 522 U.S. 118, 127 (1997) ("in determining immunity, we examine the nature of the function performed") (internal quotation marks omitted); accord Miller v. Gammie, 335 F.3d 889, 897 (9th Cir. 2003).  Thus, if a social worker exceeds their quasi-judicial roles they are not entitled to immunity—regardless of the timing of their actions.  See also Hardwick, 844 F.3d at 1115 (denying immunity for malicious activities undertaken after dependency proceedings commenced).

1  also <u>Meyers</u>, 812 F.2d at 1157 (categorizing actions that aid in the "preparation or
2  presentation" of a case as quasi-judicial).  And Defendant Joseph's statements to the
3  Court were accurate, as the Court of Appeal acknowledged "[Plaintiff Lewis] initially
4  displayed rage toward the Agency and anger toward a family member."  (Doc. No. 136-3
5  at 15.)

6      Plaintiffs argue the Dependency Social Workers are not entitled to absolute
7  immunity because Defendants' conduct was outside of the social workers' legitimate role
8  as a quasi-prosecutorial advocate presenting the state's case.  (Doc. No. 136 at 16.)
9  Certainly "egregious acts of misconduct" can abrogate a social workers immunity.
10 <u>Hardwick</u>, 844 F.3d at 1114.  In <u>Hardwick</u>, the Ninth Circuit affirmed a district court's
11 denial of absolute immunity to social workers because their conduct was "well outside of
12 the social workers' legitimate role as quasi-prosecutorial advocates."  844 F.3d at 1116.
13 In <u>Hardwick</u>, the social workers allegedly lied to the dependency court on multiple
14 occasions and knowingly misrepresented specific conduct of the mother as to her
15 children, causing the dependency court to conclude that the mother was "using" her
16 children.  <u>Id.</u> at 1115.  Indeed, the California Court of Appeal had already reviewed the
17 facts in <u>Hardwick,</u> and found there was sufficient evidence "to demonstrate the social
18 workers committed egregious acts of misconduct" and the County of Orange had
19 conceded its "social workers lied and fabricated evidence."  <u>Fogarty-Hardwick v. Cnty.</u>
20 <u>of Orange</u>, 2010 WL 2354383 *10, n.4 (Cal. App. 4th June 14, 2010).  That set of facts is
21 very different from the present case.

22     Here, the social workers have not conceded misconduct.  (Doc. No. 147 at 10; <u>see</u>
23 <u>also</u> Doc. No. 109-8 ¶ 6.)  Furthermore, the California Court of Appeal made no mention
24 of misconduct on the part of the social workers when it reversed the Juvenile Court's
25 jurisdictional decision.  <u>See</u> <u>In re Cameron L.</u>, D061636 (Cal. App. 4th August 2, 2012).
26 Quite the opposite, the Court of Appeal noted that "we cannot fault the Agency for acting
27 in an abundance of caution by removing the children from the home based on the
28 existence of marijuana and marijuana paraphernalia within the reach of the children."  <u>Id.</u>

at 12. And even though the Court of Appeal ultimately reversed the Juvenile Court's jurisdictional finding and returned C.L. and B.L. to the care of their parents, quasi-judicial immunity is not diminished simply because the advocate supported an ultimately incorrect position. See Imbler v. Pachtman, 424 U.S. 409, 423 (1976).

The Juvenile Dependency proceedings include sufficient safeguards built into the judicial process to vindicate a party's rights. Meyers, 812 F.2d at 1157. At the outset of the dependency proceedings, each Plaintiff was provided with counsel. (Doc. No. 138-4 at 2); see also Cal. Welf. & Inst. Code §§ 316, 317. Through their counsel, the parents presented evidence at the Detention Hearing and vigorously argued that the children should be returned because of additional safeguards and a willingness to cooperate with the HHSA. (Doc. No. 138-4 at 2; Doc. No. 120-3 at 9-11.) Counsel for C.L. and B.L., acting in the best interest of the minor children, joined with the HHSA in asking the Juvenile Court to order out-of-home detention. (Doc. No. 120-3 at 9.) Throughout the process, Plaintiffs were entitled to initiate a modification hearing whenever there were changed circumstances or new evidence. Cal. R. 5.560(d). These procedural safeguards ensured that Plaintiffs had the opportunity to fully engage in the adversarial process and appraise the court of evidence to support their arguments.

Turning to Plaintiffs' theories against immunity, Defendants actions do not rise to the level of misconduct or other conduct sufficient to abrogate their immunity. For example, Plaintiffs claim that Defendant Joseph improperly referenced Plaintiff Lewis's PTSD. (E.g., Doc. No. 136 at 14-15.) But they have pointed to no evidence that contradicts Defendant Joseph's representations to the Juvenile Court regarding the matter. Defendant Joseph's petition to the Juvenile Court stated that "Mr. Lewis claims to have 'severe PTSD' which has not been verified with medical documentation." (Doc. No. 138- 6 at 4.) Notably, Defendant Joseph did not diagnose Plaintiff Lewis with PTSD, but only reported that Plaintiff Lewis claimed to have PTSD. And this statement is accurate given that Plaintiff Lewis and his counsel admitted he had PTSD during the August 11, 2011 detention hearing. (Doc. No. 156 at 14.) Significantly, the Court of

Appeal noted that Plaintiff Lewis "[did] not challenge his statement that he suffered from PTSD," (Doc. No. 136-3 at 11).  Furthermore, because Defendant Joseph stated that the PTSD was unverified, the Dependency Social Workers did not misrepresent facts or withhold exculpatory information from the Juvenile Court concerning Plaintiff Lewis's PTSD self-diagnosis.

The remaining conduct of the Dependency Social Workers is similarly protected. Meyers, 812 F.2d at 1157.  Plaintiffs offer a letter from Ms. Grudzinski, a therapist working with Plaintiffs, concerning the therapy plan for Lewis and Taylor.  (Doc. No. 136 at 12-13.)  On closer review, however, the issues raised by Ms. Grudzinski reflect a difference of opinion about treatment providers and the course of therapy for the parents. For example, Ms. Grudzinski claimed that Defendant Joseph discounted the value of the "culturally appropriate services" Ms. Grudzinski was offering and advocated for conjoint therapy rather than individual therapy, among other disputes.  (Doc. No. 138-5 at 4-5.) Plaintiffs have also offered testimony from two foster care providers, Janel Dowlearn and Jennifer Anstead concerning positive interactions with the family.  (Doc. Nos. 136-15, 136-16.)

Significantly, Plaintiffs' therapists and foster parents were readily available to Plaintiffs and their counsel in the dependency proceedings.  Moreover, as representatives of the state, the Dependency Social Workers were responsible for drawing their own conclusions regarding the best interest of the children and advocating those positions before the Juvenile Court.  As a result, Plaintiffs have failed to raise a triable issue of material fact that impugns the intentions of the Dependency Social Workers or abrogates their immunity.  Hardwick, 844 F.3d at 1115 (immunity extends to social workers acting as advocates of the state but not for egregious misconduct).

In sum, the Dependency Social Workers were acting in their roles as quasi-judicial officers and are entitled to immunity.  Miller, 335 F.3d at 898-99 (9th Cir. 2003) (en banc)  Reviewing the record as a whole, Plaintiffs have failed to raise a triable issue of material fact as to whether the social workers engaged in misconduct or other actions

sufficient to abrogate their immunity. <u>Celotex Corp.</u>, 477 U.S. at 324. Accordingly, the Court grants Defendants' motion for summary judgment as to the Dependency Social Workers.

## V. **STATE-LAW IMMUNITIES**

In California, social workers are generally immune from state-law liability under California Government Code §§ 820.2 and 821.6, as well as California Civil Code § 47. (Doc. No. 109-1 at 6-7.) An exception to this general rule abrogates immunity for social workers when they maliciously engage in perjury, fabricate evidence, or fail to disclose known exculpatory evidence. Cal. Gov. Code § 820.21. For purposes of abrogating immunity, malice is defined as "conduct that is intended . . . to cause injury to the plaintiff or despicable conduct that is carried on . . . with a willful and conscious disregard of the rights or safety of others." Cal. Gov. Code § 820.21(b).

Reviewing the record as a whole, Plaintiffs have not raised a triable issue of material fact as to whether Defendants' conduct triggers the exception to immunity in § 820.21. <u>Celotex Corp.</u>, 477 U.S. at 324. Plaintiffs have not raised a triable issue of material fact as to whether the Dependency Social Workers engaged in perjury, fabrication of evidence, or knowing admissions of exculpatory evidence. The California Court of Appeal made no mention of misconduct and Plaintiffs have failed to provide sufficient evidence indicating otherwise. Additionally, Plaintiffs have raised no triable issue of material fact as to whether the Dependency Social Workers exhibited malice. Plaintiffs allege that Defendants were motivated to keep Plaintiffs' family separated in retaliation for Plaintiff Lewis's threatened legal action. (<u>E.g.</u>, Doc. No. 136 at 11-12.) But they have failed to provide sufficient evidence showing the Dependency Social Workers were influenced by Plaintiff Lewis's threats or acted differently in retaliation for those threats. As such, the Court concludes Plaintiffs' state-law claims are precluded under state-law immunity.

///

///

## **CONCLUSION**

For the foregoing reasons, the Court grants in part, and denies in part, Defendants' motion for summary judgment. The Court denies without prejudice Defendants' motion for summary judgment regarding the Monell claim. The Court grants summary judgment for Defendants on the Bane Act claims. Finally, the Court grants summary judgment for Defendants Guardado, Guild, Joseph, and Torres, the Dependency Social Workers, as to all claims, including the Fourteenth Amendment claim, the Fourth Amendment claim, the False Imprisonment claim, and the Intentional Infliction of Emotional Distress claim.

**IT IS SO ORDERED.**

DATED:  March 3, 2017

 _____
 Hon. Marilyn L. Huff
 United States District Judge