# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL LEWIS, LAUREN TAYLOR, C.L., a minor, and B.L., a minor, by and through Guardian Ad Litem, | Case No.: 13-CV-02818-H-JMA |
| Plaintiffs, | **ORDER:** |
| v. | **(1) GRANTING REASONABLE ATTORNEYS' FEES** |
| COUNTY OF SAN DIEGO, et al., | |
| Defendants. | **(2) REQUESTING SUPPLEMENTAL BRIEFING CONSISTENT WITH THIS ORDER'S DETERMINATION OF REASONABLE HOURS AND REASONABLE HOURLY RATES** |
| | [Doc. No. 259] |

On September 29, 2017, Plaintiffs C.L. and B.L., by and through their Guardian Ad Litem Lauren Taylor ("Plaintiffs"), filed a motion for attorneys' fees and costs pursuant to 42 U.S.C. § 1988. (Doc. No. 259.) On October 27, 2017, Plaintiffs filed supplemental briefing in support of their motion. (Doc. No. 273.) On November 9, 2017, Defendant County of San Diego ("the County") filed its opposition to the motion. (Doc. No. 275.) On

November 17, 2017, Plaintiffs replied. (Doc. No. 277.) On November 27, 2017, the Court requested supplemental briefing from Plaintiffs regarding the fees sought for a paralegal's work on this case. (Doc. No. 278.) Plaintiffs filed supplemental briefing on December 1 and December 4, 2017. (Doc. Nos. 279, 282, 283.) The County filed supplemental briefing on December 4, 2017. (Doc. No. 281.) On December 8, 2017, the County also filed an opposition to Plaintiffs' bill of costs. (Doc. No. 284.)

On December 1, 2017, the Court held a hearing on the motion. Robert Powell appeared for Plaintiffs. David Brodie and Erica Cortez appeared for the County. For the following reasons, the Court grants Plaintiffs reasonable attorneys' fees. For purposes of calculating the lodestar figure, the Court also requests supplemental briefing from Plaintiffs consistent with this Order's determination of a reasonable number of hours and reasonable hourly rates.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 8, 2011, Defendants Ian Baxter and Nancy Quinteros, County social workers, visited the home of Plaintiffs Michael Lewis and Lauren Taylor, parents of C.L. and B.L. (II-111:25-112:12.)[1] Baxter and Quinteros were responding to a referral from the Coronado Police Department, which had previously visited the home and observed a marijuana processing lab, along with a high volume of marijuana, marijuana derivatives, and marijuana paraphernalia. (II-10:7-9, II-30:13-19, II-24:17-20, II-32:24-33:5, II-54:17-21, II-81:20-82:1.) After observing the home and interviewing Plaintiffs, Baxter and Quinteros removed the children at the instruction of their supervisor, Benita Jemison. (II-250:17-251:4, II-120:6-7, III-238:12-7, III-273:14-17.)

Plaintiffs proceeded to trial against the county social workers, arguing the social workers violated their Fourth and Fourteenth Amendment rights by removing C.L. and B.L. from their home without a warrant. Plaintiffs also claimed Defendant County of San

---

[1] For purposes of convenience, citations to the trial record will be according to the Volume Number. Citations will be of the format Vol-Page:Line. For example, II-111:25 is a citation to the Second Volume, page 111, line 25. The volumes are located at ECF Document Nos. 210-214.

Diego (the "County") was liable under <u>Monell v. New York City Department of Social Services</u>, 436 U.S. 658 (1978). Defendants maintained that there had been no constitutional violation because the children were in imminent risk of serious bodily harm, there was insufficient time to seek a warrant, and there were no less restrictive alternatives.

The case proceeded to a jury trial on March 14, 2017. (Doc. Nos. 180, 187, 191.) At the end of trial, the jury rendered a verdict in favor of individual defendants Quinteros, Baxter, and Jemison. (Doc. No. 201, "Special Verdict Form 1.") On Special Verdict Form 1, the jury found that Baxter's and Quinteros's actions in removing Plaintiffs C.L. and B.L. were not unreasonable and, thus, they had not violated Plaintiffs' Fourth or Fourteenth Amendment rights. (<u>Id.</u> Qs. 1, 7, 14.) The jury concluded that Jemison's actions constituted an unreasonable interference with Plaintiffs' rights of familial custody and companionship under the Fourteenth Amendment, but that Jemison had not acted with deliberate indifference. (<u>Id.</u> Qs. 7, 8.) The jury also concluded that Jemison's actions were intentional and unreasonable under the Fourth Amendment but were not the legal cause of Plaintiffs' injuries. (<u>Id.</u> Qs. 1, 2.)

The Court instructed the jury to "[c]omplete Special Verdict Form 2 only if you found a violation of the Fourth and/or Fourteenth Amendment claim against a defendant in Special Verdict Form 1." (Doc. No. 202, "Special Verdict Form 2"; IV-210:1-7.) Despite the Court's instruction to only complete Special Verdict Form 2 if they found a constitutional violation by an individual defendant, the jury proceeded to complete Special Verdict Form 2. (Id.) The jury found that the individual Defendants had acted pursuant to an expressly adopted official policy or longstanding practice or custom of the County, but found such policy, practice, or custom was not the moving force that caused Plaintiffs' injury. (<u>Id.</u> Qs. 1, 2.) Next, the jury found that Defendant County of San Diego had failed to adequately train its social workers to prevent violations of the Constitution when handling usual and recurring situations. (<u>Id.</u> Q. 3.) The jury also concluded the County had been deliberately indifferent to the known or obvious consequences of its failure to train social workers, (<u>id.</u> Q. 4), and that this failure to train was so closely related to the

deprivation of a plaintiff's rights as to be the moving force that caused the injury, (id. Q. 5). The jury awarded nominal damages in the amount of $1 per Plaintiff. (Id. Q. 7.)

Following the judgment, the parties filed various post-trial motions attacking the jury's verdict. (Doc. Nos. 215, 218, 219, 225, 229, 230, 240.) On August 18, 2017, the Court denied the parties' motions and affirmed judgment against the County. (Doc. No. 243.) The Court determined that Defendant Jemison was the legal cause of the violation of C.L. and B.L.'s Fourth Amendment rights but that Jemison was entitled to qualified immunity because those rights were not clearly established at the time. (Doc. No. 243.) Because there was a constitutional violation, the Court affirmed the jury's verdict against the County as to Plaintiffs C.L. and B.L. (Id.) However, because there was no Fourteenth Amendment violation, the Court struck the jury's verdict against the County as to Plaintiffs Lewis and Taylor. Accordingly, the Court amended the previous Judgment. (Doc. Nos. 204, 245.) The Court entered judgment in favor of Defendants Baxter, Quinteros, and Jemison on all causes of action. (Doc. No. 245.) The Court entered judgment in favor of Defendant County of San Diego as to all claims by Plaintiffs Lewis and Taylor. (Id.) The Court entered judgment in favor of Plaintiffs C.L. and B.L. as to their claims against Defendant County of San Diego and awarded C.L. and B.L. each $1 in nominal damages, payable by the County of San Diego, as well as costs and fees as allowed by law. (Id.)

## DISCUSSION

## I.     Motion for Attorneys' Fees Pursuant to 42 U.S.C. § 1988.

Although "[o]ur legal system generally requires each party to bear [its] own litigation expenses," 42 U.S.C. § 1988(b) authorizes district courts to award a "reasonable attorney's fee" as costs of suit to the "prevailing party" in 42 U.S.C. § 1983 actions. Fox v. Vice, 563 U.S. 826, 832-33 (2011). A prevailing plaintiff may also recover reasonable paralegal fees incurred during the course of litigation. See Missouri v. Jenkins, 491 U.S. 274, 287-88 (1989); Woods v. Carey, 722 F.3d 1177, 1179 n.1 (9th Cir. 2013). In § 1983 actions, a prevailing plaintiff "serves as a private attorney general, vindicating a policy that Congress considered of the highest priority" and, therefore, "should ordinarily recover an

13-CV-02818-H-JMA

attorney's fee from the defendant—the party whose misconduct created the need for legal action." <u>Fox</u>, 563 U.S. at 833 (internal quotation marks and citations omitted).

A plaintiff that wins only nominal damages constitutes a "prevailing party" for purposes of § 1988. <u>Klein v. City of Laguna Beach</u>, 810 F.3d 693, 698 (9th Cir. 2016) (citing <u>Farrar v. Hobby</u>, 506 U.S. 103, 112 (1992)). But "[i]f a district court chooses to award fees after a judgment for only nominal damages, it must point to some way in which the litigation succeeded, *in addition* to obtaining a judgment for nominal damage." <u>Mahach-Watkins v. Depee</u>, 593 F.3d 1054, 1059 (9th Cir. 2010) (quoting <u>Wilcox v. City of Reno</u>, 42 F.3d 550, 555 (9th Cir. 1994)); <u>see also</u> <u>Maria J. Morales v. Sonya Fry</u>, 873 F.3d 817, 827 (9th Cir. 2017). Here, Plaintiffs are the "prevailing party" for purposes of § 1988 because the jury awarded nominal damages. <u>See id.</u> Therefore, in ruling on Plaintiffs' motion for attorneys' fees, the Court must first determine whether Plaintiffs are entitled to the requested fees at all, which turns on whether the litigation "succeeded, *in addition* to obtaining a judgment for nominal damage." <u>See</u> <u>Mahach-Watkins</u>, 593 F.3d at 1059.

### A. Entitlement to Attorneys' Fees.

The Ninth Circuit has adopted the three-factor test derived from Justice O'Connor's concurrence in <u>Farrar</u> to determine whether a plaintiff succeeded beyond a judgment for nominal damages. <u>See</u> <u>Morales</u>, 873 F.3d at 827 (citing <u>Mahach-Watkins</u>, 593 F.3d at 1059). "The three factors are: (1) the difference between the amount recovered and the damages sought, which in most nominal damages cases will disfavor an award of fees; (2) the significance of the legal issue on which the plaintiff claims to have prevailed; and (3) whether the plaintiff accomplished some public goal." <u>Id.</u> "[W]here the district court properly has weighed these three factors, the resulting award of attorney's fees is not an abuse of its discretion." <u>Id.</u> (quoting <u>Mahach-Watkins</u>, 593 F.3d at 1060). Accordingly, the Court first considers the three <u>Farrar</u> factors. <u>See id.</u>

The Court notes that the County makes a reasonable argument that Plaintiffs are not entitled to attorneys' fees. (<u>See</u> Doc. No. 275 at 5-8.) Notwithstanding Plaintiffs' limited

overall success, however, the jury found for the Plaintiffs on their municipal liability claim and the Court upheld the verdict. (Doc. No. 245.) And having weighed the three <u>Farrar</u> factors, below, the Court concludes that Plaintiffs are entitled to fees.

### 1. Amount of Damages Sought and Recovered.

Beginning with the first <u>Farrar</u> factor, the Court considers the difference between the amount of damages sought and recovered. <u>See</u> <u>Mahach-Watkins</u>, 593 F.3d at 1060.

In final argument, Plaintiffs' counsel Robert Powell stated that he "want[ed] the citizens of the County of San Diego to read something about a significant award." (IV-121:20-25.) He asked the jury to award to his clients the same amount of damages requested by Plaintiff Michael Lewis, which turned out to be $1 million. (IV-122:24 -123:5; 143:18-20.) Deferring to Mr. Lewis's attorney's "thought process," Mr. Powell offered the jury no clear explanation or calculation for why $1 million would be appropriate compensatory damages for Plaintiffs.[2] (<u>See</u> IV-131:15-16.) And the evidence did not justify that amount; in particular, the record showed that C.L. and B.L. were happy, well-adjusted children. (<u>See</u> II-94:395:13.) Mr. Powell also requested $30,000 in punitive damages against Quinteros, Jemison, and Baxter. (IV-126:6-18.)

The jury returned a verdict in favor of Quinteros, Baxter, and Jemison, and against the County of San Diego. (Doc. Nos. 201, 202.) The jury awarded each Plaintiff one dollar in nominal damages against the County. (Doc. No. 202.) Following various post-trial motions, (Doc. Nos. 215, 218, 219, 225, 229, 230, 240), the Court struck the jury's verdict against the County as to Plaintiffs Lewis and Taylor but affirmed the verdict against the County as to Plaintiffs C.L. and B.L, (Doc. No. 243). The Court entered an amended

---

[2] Opposing Plaintiffs' motion for attorneys' fees, the County maintains that Mr. Powell asked for at least $2 million in compensatory damages. (Doc. No. 275 at 4.) The transcript of Mr. Powell's closing argument states "I'm just going to ask you to apply what [Mr. King] says to my client, for the mother of these boys and for these boys." IV-123:3-5. One interpretation is that Mr. Powell asked the jury to award Ms. Taylor, C.L., and B.L. $1 million each, producing $3 million total compensatory damages. Another interpretation is that Mr. Powell asked for $1 million total. At any rate, for purposes of the first <u>Farrar</u> factor, the difference between the amount Plaintiffs recovered ($2) and the low-end interpretation of the amount requested ($1 million), disfavors the award of fees.

13-CV-02818-H-JMA

judgment in favor of Plaintiffs C.L. and B.L. as to their claims against the County and awarded C.L. and B.L. each $1 in nominal damages payable by the County. (Doc. No. 245 at 2.)

To summarize, Plaintiffs' counsel requested at least $1 million in compensatory damages and $30,000 in punitive damages, yet Plaintiffs C.L. and B.L. each received only one dollar in nominal damages. The difference between the amount requested and received here is less drastic than the difference in <u>Farrar</u>, where the plaintiff requested $17 million in damages and received only one dollar. 506 U.S. at 121 (denying fees). On the other hand, the difference here is roughly similar to that in <u>Romberg</u>, where plaintiffs sought $2 million in compensatory and punitive damages but received only nominal damages. <u>See</u> 48 F.3d at 454 (denying fees). Accordingly, the first <u>Farrar</u> factor somewhat disfavors an award of attorneys' fees. <u>See</u> <u>id.</u>

### 2. Significance of the Legal Issue on Which Plaintiffs Prevailed.

Turning to the second <u>Farrar</u> factor, the Court "compares the significance of the legal issue on which the plaintiff claims [to have] prevailed to other issues that circuit courts have held to qualify as important." <u>Morales</u>, 873 F.3d at 827; <u>see</u> <u>Mahach-Watkins</u>, 593 F.3d at 1061-62. The Ninth Circuit has "repeatedly noted the relevance of this second factor." <u>Id.</u> at 1061.

Here, Plaintiffs prevailed on their municipal liability claim, in which they alleged that the County's failure to adequately train its social workers caused the unlawful seizure of minor children. (<u>See</u> Doc. No. 17 ¶ 54.) The Court compares the significance of that legal issue to others, such as the right to be free from an officer's use of deadly force, the right to be free from discrimination in school-sponsored contact sports, the right to be free from cruel and unusual punishment, and the right to be free from illegal detention. <u>See</u> <u>Mahach-Watkins</u>, 593 F.3d at 1062. Particularly relevant here, the Eighth Circuit has recognized the right to be free from illegal detention as significant for purposes of <u>Farrar</u>. <u>See</u> <u>Piper v. Oliver</u>, 69 F.3d 875, 877 (8th Cir. 1995). Furthermore, this case involved parents' and children's "well-elaborated constitutional right to live together without

governmental interference"; "[t]hat right is an essential liberty interest protected by the Fourteenth Amendment's guarantee that parents and children will not be separated by the state without due process of law except in an emergency." Wallis v. Spencer, 202 F.3d 1126, 1136 (9th Cir. 2000). In light of the "essential liberty interest" at issue in this case, see id., as well as a sister circuit's recognition of a closely related right, Piper, 69 F.3d at 877, the Court concludes that the second Farrar factor supports the award of attorneys' fees.

### 3. Whether Plaintiffs Accomplished Some Public Goal.

The Court next considers the third Farrar factor: whether Plaintiffs accomplished some public goal. See Mahach-Watkins, 593 F.3d at 1062. This factor may favor the award of attorney's fees where, in addition to nominal damages, the § 1983 action "achieved other tangible results—such as sparking a change in policy." See id. (quoting Wilcox, 42 F.3d at 555). Along the same lines, this factor may also favor the award of fees where the jury's verdict has a deterrent effect on those who establish and implement official policies governing the conduct at issue. See id. at 1063 (concluding third Farrar factor favored award of attorney's fees in § 1983 action where verdict on plaintiff's excessive force claim "established a deterrent to . . . others who establish and implement official policies governing arrests of citizens").

Here, Plaintiffs assert that, "[a]s a result of [the] judgment [in this case], the County will have to—or at least should—improve its training for social workers who handle cases where encounters involving marijuana are likely." (Doc. No. 259-1 at 2.) The County disagrees and points out that Plaintiffs sought no injunctive relief in this case. (Doc. No. 275 at 4, 7.)

The County's own conclusions about the propriety of its social-worker training are not determinative as to whether Plaintiffs accomplished some public goal. See Mahach-Watkins, 593 F.3d at 1062. In Mahach-Watkins, the Ninth Circuit affirmed the district court's conclusion that a § 1983 excessive force action accomplished a public goal because the verdict would deter the defendant CHP officer from unconstitutional conduct and deter

those who create official policies governing arrests. Id. at 1062-63. CHP's "exoneration" of the officer did not render his conduct lawful, id. at 1062, nor did "CHP's stated choice to ignore [the] deterrent . . . minimize the importance of the case to others" who create official policies governing arrests, id. at 1063.

Similarly, here, the jury's verdict that the County failed to adequately train its social workers to prevent constitutional violations has a deterrent effect, and accordingly, the Plaintiffs accomplished a public goal to satisfy the third Farrar factor. See id.

### 4. Conclusion.

Having weighed the three Farrar factors, the Court concludes that Plaintiffs are entitled to an award of reasonable attorneys' fees.

## B. Determination of a Reasonable Attorney's Fee.

To determine the amount of a reasonable fee under § 1988, district courts generally perform a two-step analysis. See Gonzalez v. City of Maywood, 729 F.3d 1196, 1202 (9th Cir. 2013); Klein, 810 F.3d at 698. First, courts use the "lodestar method to determine what constitutes a reasonable attorney's fee." Gonzalez, 729 F.3d at 1202 (internal quotation marks and citations omitted). Second, the court may adjust the lodestar based on the twelve "Kerr factors." Id. at 1209 & n.11.[3] If the court has taken into account any of the Kerr factors when calculating the lodestar at step one, then the court should not again adjust the lodestar at step two based on the same factors. See id. at 1209 n.11 (citing Morales, 96 F.3d at 364 n.9). Indeed, it is presumed that the court accounts for certain Kerr factors in its

---

[3] The twelve Kerr factors bearing on reasonableness are:

(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

Morales v. City of San Rafael, 96 F.3d 359, 363 n.8 (9th Cir. 1996).

lodestar calculation at step one: specifically, "(1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, (4) the results obtained, and (5) the contingent nature of the fee agreement." Id. (quoting Morales, 96 F.3d at 363).

The moving party "has an initial burden of production, under which it must produce satisfactory evidence establishing the reasonableness of the requested fee." United States v. $28,000.00 in U.S. Currency, 802 F.3d 1100, 1105 (9th Cir. 2015) (internal quotation marks and citations omitted). If the moving party carries its burden, then the court makes a factual determination as to the requested fee's reasonableness, which usually "involve[s] considering both the proponent's evidence and evidence submitted by the fee opponent challenging the accuracy and reasonableness of the facts asserted by the prevailing party." Id. (internal quotation marks and citation omitted).

### 1. Computation of the Lodestar.

"Under the lodestar method, the district court 'multiplies the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate.'" Gonzalez, 729 F.3d at 1202 (quoting Ballen v. City of Redmond, 466 F.3d 736, 746 (9th Cir. 2006)). The resulting "lodestar figure" is a "presumptively reasonable" § 1988 fee award. Id. When computing the lodestar, the Court considers "(1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, (4) the results obtained, and (5) the contingent nature of the fee agreement." Id. at 1209 n.11 (quoting Morales, 96 F.3d at 364 n.9).

### a. Reasonable Number of Hours.

A "reasonable" number of hours equals "[t]he number of hours . . . [which] could reasonably have been billed to a private client." Gonzalez, 729 F.3d at 1202 (quoting Moreno v. City of Sacramento, 534 F.3d 1106, 1111 (9th Cir. 2008)). "The prevailing party has the burden of submitting billing records to establish that the number of hours it has requested are reasonable." Id. If the prevailing party's submitted billing records "include hours that could not reasonably be billed to a private client and, therefore, are not properly

included in a § 1988 fee award," the Court should exclude such hours, using either an "hour-by-hour analysis of the fee request" or "across-the-board percentage cuts in the number of hours claimed or in the final lodestar figure." Id. at 1203 (internal quotation marks and citations omitted).

Plaintiffs seek compensation for the hours billed by four attorneys and two paralegals.[4] (See Doc. No. 259-1 at 8.) Opposing the motion, the County maintains that Plaintiffs should not receive fees for work on unsuccessful causes of action and motions, for unreasonable or unnecessary time, or for clerical tasks and travel time. (Doc. No. 275 at 15-24.) The County also takes issue with Plaintiffs' block billing and "vague and severely redacted entries." (Id. at 20.) The Court will address each argument in turn.

First, the Court has discretion to reduce a fee award based on a plaintiff's limited success. Sorenson v. Mink, 239 F.3d 1140, 1147 (9th Cir. 2001) (citing Hensley v. Eckerhart, 461 U.S. 424, 436-37 (1983)). Under Hensley's two-step process for analyzing a deduction for limited success, the Court first considers whether "the plaintiff fail[ed] to prevail on claims that were unrelated to the claims on which he succeeded." 461 U.S. at 434. "Claims are unrelated if they are entirely distinct and separate from the claims on which the plaintiff prevailed." Sorenson, 239 F.3d at 1147 (internal quotation marks and citation omitted.) Second, the Court considers whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." Hensley, 461 U.S. at 434. "In answering that question, a district court 'should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.'" Sorenson, 239 F.3d at 1147 (quoting Hensley, 461 U.S. at 435). A plaintiff should recover a "fully compensatory fee" where she has achieved "excellent results." Id.

---

[4] In response to the County's objection regarding "transient timekeepers," (Doc. No. 275-9 ¶ 119-22), Plaintiffs voluntarily removed from their fee request all billings by attorneys Brett O. Terry and Brody A. McBride. (Doc. No. 277-1 ¶ 11.) Accordingly, the Court disregards Mr. Terry's and Mr. McBride's billing records and does not include either attorney's time in the fee award.

13-CV-02818-H-JMA

Here, the County contends that Plaintiffs should not receive fees for time spent on claims against the social workers involved in the post-removal juvenile dependency case (individual defendants Joseph, Guardado, Torres, and Guild).[5] (Doc. No. 275 at 17.) Moreover, the County's expert opines that the Court should deduct the time Plaintiffs spent on their unsuccessful summary adjudication motion and on their opposition to Defendants' summary judgment motion. (Doc. No. 275-9 ¶¶ 148-49.)

The Court declines to deduct the time Plaintiffs spent on their summary adjudication motion, which involved Plaintiffs' warrantless removal claim against social worker defendants Baxter, Quinteros, and Jemison, (Doc. No. 84); that claim and the municipal liability claim on which Plaintiffs prevailed at trial "involve[d] a common core of facts" and similar legal theories and were, thus, related. McCown v. City of Fontana, 565 F.3d 1097, 1103 (9th Cir. 2009) (citing Hensley, 461 U.S. at 435); see Sorenson, 239 F.3d at 1147. Plaintiffs voluntarily reduced by half their time spent opposing Defendants' summary judgment motion; Plaintiffs intend this reduction "to account for the dismissal of Defendants Joseph, Guardado, Torres, and Guild." (Doc. No. 277-1 ¶ 19.) The Court finds this reduction reasonable and concludes that it adequately accounts for Plaintiffs' lack of success against Defendants Joseph, Guardado, Torres, and Guild.

The County also argues that Plaintiffs should not receive full compensation for time spent opposing the County's request to take seven individual defendants' depositions at the County Administration Building or for time spent preparing "excessive" motions in limine. (Doc. No. 275 at 17-18.) The Court agrees that this time was not "reasonably expended" and warrants reduction. Regarding the deposition-location dispute, the Magistrate Judge found that Plaintiffs had identified no reason why the Defendants' preferred location was inadequate. (Doc. No. 67 at 3.) Accordingly, the Court deducts all of the time Plaintiffs spent opposing the County's request. See Hensley, 461 U.S. at 433-34 ("Counsel for the

---

[5] Defendants Joseph, Guardado, Torres, and Guild had no involvement in the warrantless removal of B.L. and C.L. from their parents' home, but rather became involved in the case after the Juvenile Court placed the children under the state's protection. (Doc. No. 159 at 9.)

prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary . . . ."). As for the motions in limine, the Court specified that each side could file a maximum of five motions, absent further order of the Court, (Doc. Nos. 107, 118), but Plaintiffs filed a total of ten, (Doc. No. 134). Mr. Powell explains "this was due to a misinterpretation" of the Court's instructions and was "not in bad faith." (Doc. No. 277-1 ¶ 22.) Plaintiffs have voluntarily deducted all time spent on motions in limine prior to the Court's order striking Plaintiffs' excessive motions. (Id. ¶ 23.) The Court finds that the remaining time Plaintiffs spent on the motions in limine was reasonable and makes no further reduction on that basis.[6]

Additionally, Plaintiffs assert that Defendants should not recover fees for time spent on clerical tasks or on travel. (Doc. No. 275 at 21-24.) A fee award should not include time spent on clerical matters, whether billed at an attorney's or paralegal's hourly rate. Davis v. City & County of San Francisco, 976 F.2d 1536, 1543 (9th Cir. 1992) (citing Missouri v. Jenkins, 491 U.S. 274, 288 n.10 (1989)), vacated on other grounds, 984 F.2d 345 (9th Cir. 1993). Clerical tasks include, for example, copying and filing documents, Ramirez v. Escondido Unified Sch. Dist., No. 11-CV-1823, 2014 WL 12675859, at *5 (S.D. Cal. Apr. 17, 2014), calendaring deadlines, drafting subpoenas, and preparing instructions for service, Miller v. Schmitz, No. 12-CV-137, 2017 WL 633892, at *6-7 (E.D. Cal. Feb. 15, 2017) (citations omitted).

As an initial matter, Plaintiffs have voluntarily deducted all but two of the specific time entries by Mr. Powell, Ms. Marinho, and Ms. Covill that the County argued were clerical. (Doc. No. 277-1 ¶ 13.) The Court finds the remaining two entries that the County

---

[6] The County also argues that Plaintiffs should not receive fees for time spent requesting to amend the first amended complaint. (Doc. No. 275 at 17.) In their reply brief, Plaintiffs agreed to deduct that time in its entirety because the proposed claims were "distinct and separate from the claims" in the first amended complaint. (Doc. No. 277 at 10.) The Court agrees this deduction is appropriate and deducts Plaintiffs' time spent on the motion for leave to amend. (See Doc. No. 63 at 2 (denying motion for leave to amend because Plaintiffs' proposed new claims were "separate from the ones in the present complaint, as they involve medical examinations and different transactions that would unduly complicate" the case).) Sorenson, 239 F.3d at 1147.

challenged—one by Mr. Powell involving his review of a deposition video and one by Ms. Covill involving preparations for the pretrial hearing and preparation of exhibits and deposition transcripts—are non-clerical and thus reasonably included in the fee request. (Id.) The Court finds that the remainder of Mr. Powell's, Ms. Marinho's and Ms. Covill's time is non-clerical and does not warrant further reduction on that basis.

Next, the County contends that all of Ms. Liu's time was clerical and should be excluded. (Doc. No. 275-9 at 34-40.) The County's objection is overbroad, but the Court has nonetheless given careful consideration to striking certain clerical tasks that remain in Ms. Liu's revised billing records. See Nadarajah v. Holder, 569 F.3d 906, 921 (9th Cir. 2009) ("When clerical tasks are billed at hourly rates, the court should reduce the hours requested to account for the billing errors."). These clerical tasks include calendaring deadlines, (Doc. No. 277-3 Ex. O at 1 ("5/25/2016 . . . Tasked deadline to object.")), and preparing proofs of service, (see, e.g., id. Ex. O at 7 ("9/29/2017 . . . . Draft proposed order/POS.")). But having reviewed the entirety of Ms. Liu's revised billing records, from which, the Court notes, Ms. Liu already made deductions for clerical tasks, (id. ¶ 5), the Court concludes that the clerical entries are not numerous enough to warrant deduction. Moreover, Ms. Liu assisted Plaintiffs' preparation and prosecution of the case, and her non-clerical time was reasonably included in the fee request.

Regarding time spent on travel, the Court may award reasonable travel expenses that would "normally [be] billed to fee-paying clients." Davis v. Madison County, 927 F.2d 1473, 1487 (9th Cir. 1991); see also Chalmers v. City of Los Angeles, 796 F.2d 1205, 1216 n.7 (9th Cir. 1986). Here, the County argues that Plaintiffs' travel time is unreasonable because "Plaintiffs have failed to show that it was necessary to use an attorney who lives and works over 400 miles away [from San Diego], rather than local counsel." (Doc. No. 275 at 23.) However, it is not per se unreasonable for a plaintiff to use out-of-town counsel when a local attorney might also be available; "[i]f the travel time was reasonably expended, the travel costs should also be recoverable." Johnson v. Credit Int'l, Inc., 257 F. App'x 8, 10 (9th Cir. 2007) (mem.) (citing Chalmers, 796 F.2d at 1216 n.7); see Thalheimer

13-CV-02818-H-JMA

v. City of San Diego, No. 9-CV-2862, 2012 WL 1463635, at *4 (S.D. Cal. Apr. 26, 2012) (awarding reasonable travel expenses for out-of-town counsel specializing in First Amendment law despite possible existence of local qualified counsel). Plaintiffs have presented evidence of the "specialized, niche area of the law" in which Mr. Powell practices, as well as of his expertise. (Doc. No. 259-2 ¶ 11; see Doc. Nos. 259-18 ¶ 9, 259-20 ¶ 14.) Exercising its "broad discretion to award reasonable travel fees and travel expenses," the Court concludes Plaintiffs have demonstrated the reasonableness of the time spent on travel. Nader v. Bennett, 407 F. App'x 190, 191 (9th Cir. 2010) (mem.).

Finally, the County contends that the Court should deduct 50% of redacted entries in Plaintiffs' billing records because it is difficult to determine whether those entries "are related to successful or unsuccessful claims, or whether the tasks being performed are reasonable, excessive, or clerical in nature." (Doc. No. 275 at 21.) Having reviewed the billing records, the Court concludes that such a deduction is unwarranted. The County fails to identify specific entries, and instead generally objects that Plaintiffs' records contain block billing. (Doc. No. 275 at 20.) The Court would have preferred fewer block-billed entries in Plaintiffs' records. (See, e.g., Doc. No. 722-2 ("Robert Powell Revised Billing") (billing entries on 9/12/2016, 11/4/2016, 2/2/2017, 3/10-3/17/2017).) But having reviewed all of the billing records, the Court concludes that the instances of block-billing are not significant enough to warrant a general reduction in fees or deduction of specific block-billed entries. See Welch v. Metro. Life Ins. Co., 480 F.3d 942, 948 (9th Cir. 2007).

To summarize, the Court adopts the deductions that Plaintiffs voluntarily made to their own billing records, specifically: (1) all of the time spent on this case by attorneys Terry and McBride; (2) one-half of the total time Plaintiffs spent opposing Defendants' summary judgment motion; (3) all of the time Plaintiffs spent on motions in limine prior to the Court's order striking the excessive motions; (4) all of the time Plaintiffs spent requesting to amend the first amended complaint; and (5) all of the sixteen time entries that Plaintiffs' expert identified as clerical, except for Mr. Powell's entry dated 1/10/2017 ("Get computer set up to play Lewis video deposition . . . ."), totaling 2 hours, and Ms. Covill's

entry dated 3/10/2017 ("Prepare for and attend pretrial hearing . . . ."), totaling 4.5 hours, both of which entries are reasonably included, (see Doc. No. 275-9 ¶ 137). The Court also deducts all of the time Plaintiffs spent opposing the defense's request to take seven individual defendants' depositions at the County Administration Building. The Court concludes that the remaining time entries in Plaintiffs' billing records are reasonably included in their fee request.

### b. Reasonable Hourly Rate.

Having computed a reasonable number of hours, the Court now "must determine a reasonable hourly rate to use for attorneys and paralegals in computing the lodestar amount." Gonzalez, 729 F.3d at 1205. The prevailing market rates in the forum in which the district court sits set the reasonable hourly rate. Id. (internal quotation marks and citation omitted). Within this geographic community, the district court should consider "the experience, skill, and reputation of the attorney or [paralegal]." Id. at 1205-06 (citation omitted). The fee applicant must produce "satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." Jordan v. Multnomah County, 815 F.2d 1258, 1263 (9th Cir. 1987). As evidence of prevailing market rates, the Court considers all of the information in the record, including affidavits by the fee applicant's attorneys and other attorneys regarding prevailing market rates, as well as rate determinations in other cases, "particularly those setting a rate for the [fee applicant's] attorney." See United Steelworkers of Am. v. Phelps Dodge Corp., 896 F.2d 403, 407 (9th Cir. 1990).

### i. Attorneys' Hourly Rates.

#### Robert Powell

Mr. Powell requests an hourly rate of $700, which the County argues is unreasonably high. (Doc. Nos. 259-2 ¶ 26, 275 at 8.) To support his requested hourly rate, Mr. Powell cites two of his prior awards. (Doc. No. 259-2 ¶¶ 27, 28.) First, in a 2013 Northern District of California case, Mr. Powell received $500 per hour pursuant to an unopposed fee award.

Watson v. County of Santa Clara, No. C-06-4029, 2013 WL 5303777, at *3 (N.D. Cal. Sept. 20, 2013). Second, in a 2012 Eastern District case, Mr. Powell received slightly more than $700 per hour pursuant to a settlement, but the court there noted that $700 per hour was twice "the high-end central California hourly fee" of $350 and "would provide a very substantial bonus for taking the risk of failure and for counsels' special expertise." McCue v. South Fork Union Sch. Dist., No. 10-CV-233, 2012 WL 2995666, at *7 (E.D. Cal. July 23, 2012).

In addition, Mr. Powell submits declarations by two civil rights attorneys: Paul W. Leehey and Carol A. Sobel. (See Doc. Nos. 259-20, 259-22.) Mr. Leehey, a San Diego-based attorney who has prosecuted civil rights cases for approximately 26 years, states that Mr. Powell's requested rate is "at or below the prevailing market rate for attorneys providing comparable legal services in San Diego." (Doc. No. 259-20 ¶ 16.) Mr. Leehey bases his opinion on his knowledge of Mr. Powell's "skill, reputation, and experience, as well as the difficulty in litigating the complex legal issues in these types of civil right cases." (Id.) Mr. Leehey also cites a $585-per-hour award his co-counsel received in Orange County Superior Court in 2010. (Id. ¶ 17 & Ex. K.) Mr. Leehey focuses on civil rights cases involving the child dependency system and has been co-counsel with Mr. Powell several times. (Id. ¶¶ 9, 14.) Mr. Leehey further states that, in his practice, he requests $750 per hour, but he gives no indication that he has received that rate. (Id. ¶ 17.)

Ms. Sobel, who has practiced civil rights litigation for more than 30 years, owns her own practice in Los Angeles. (Doc. No. 259-22 ¶¶ 2, 5.) The County objects to Ms. Sobel's declaration as lacking foundation, asserting that "Ms. Sobel works in Los Angeles, not San Diego," and that she does not appear to have submitted fee requests and fee declarations in any Southern District cases. (Doc. No. 275 at 10.) Nevertheless, Ms. Sobel opines that $700 per hour "is well below rates sought and approved in the past for attorneys in the Southern District practicing less time than Mr. Powell." (Doc. No. 259-22 ¶ 18.)

Ms. Sobel highlights two Southern District cases, both of which were class actions. (Id. ¶¶ 18-19.) In the first, an anti-SLAPP litigation from 2015, the Court awarded law firm

13-CV-02818-H-JMA

partners hourly rates ranging from $600 to $825 and associates hourly rates from $250 to $440. <u>Makaeff v. Trump Univ., LLC</u>, No. 10-CV-940, 2015 WL 1579000, at *5 (S.D. Cal. Apr. 9, 2015) (finding those rates were consistent with rates in the "National Law Journal survey, with those previously approved by this Court and in this District in class action settlements, and with this Court's familiarity of the rates charged in the San Diego community."). And in the second class action Ms. Sobel cites, a Telephone Consumer Protection Act case from 2016, the Court approved the award of 25% of the gross settlement for attorneys' fees. <u>Franklin v. Wells Fargo Bank, N.A.</u>, No. 14-CV-2349, 2016 WL 402249, at *6 (S.D. Cal. Jan. 29, 2016). In that case, class counsel reported hourly rates of $575 and $800 for two law firm partners, (Doc. No. 259-22, Ex. 8 at 18), but the court did not explicitly approve those rates or any others. <u>See</u> 2016 WL 402249, at *6. Finally, Ms. Sobel compiled a list of hourly rates requested in several Southern District cases and one Central District case and identified each requesting attorney's years of experience. (Doc. No. 259-22 ¶ 13.) Her survey is not particularly helpful in determining whether the listed attorneys are of "comparable skill, experience and reputation" as Mr. Powell, or whether the rates requested were in fact granted. <u>See</u> <u>Gonzalez</u>, 729 F.3d at 1208 (citation omitted).

The Court also considers the County's evidence challenging the reasonableness of Mr. Powell's requested hourly rate. <u>See</u> <u>U.S. Currency</u>, 802 F.3d at 1105. Citing several Southern District fee awards, a *National Law Journal* annual survey, and its own expert, the County contends that $500 is a reasonable hourly rate for Mr. Powell.[7] (Doc. No. 275 at 12-13.) The 2013 *National Law Journal* survey indicates that the average billing rates for partners and associates in the three firms closest to San Diego included in the survey were $500 for partners and $315 for associates. (<u>Id.</u> at 14.) The County's expert, who has

---

[7] The County also cites the *Laffey* Matrix, but the Court declines to consult this source because courts in this Circuit do not find it persuasive evidence of prevailing market rates for similar work. <u>Ruiz v. XPO Last Mile, Inc.</u>, No. 5-CV-2125, 2017 WL 1421996, at * 4 n.1 (S.D. Cal. Apr. 20, 2017) (citations omitted).

13-CV-02818-H-JMA

conducted roughly 2,000 legal fee audits throughout the country over the past 23 years, states that $500 is a reasonable hourly rate for Mr. Powell. (Doc. No. 275-9 ¶¶ 5, 113-14.) He also cites an international child custody case in the Southern District in which the court awarded $450 per hour to a 1996 bar admittee who practiced at a mid-sized firm. (Id. ¶ 113 (citing Albani v. Albani, No. 15-CV-1980, 2016 WL 3074407, at *2 (S.D. Cal. May 31, 2016)).)

Having carefully considered the parties' evidence and the circumstances of this case, and having reviewed prior awards in this District, the Court determines that $600 is a reasonable hourly rate for Mr. Powell. See Moreno v. City of Sacramento, 534 F.3d 1106, 1115 (9th Cir. 2008) ("District judges can certainly consider the fees awarded by other judges in the same locality in similar cases."). In this District, "only the most skilled [civil rights] counsel earn $600 or more per hour." Ramirez, 2014 WL 12675859, at *3. Even attorneys with significant civil rights expertise have been awarded hourly rates of less than $600 per hour. See, e.g., Langer v. GTAC, Inc., No. 14-CV-1071, 2015 WL 3492475, at *3 (S.D. Cal. June 3, 2015) (awarding $425 per hour to disability-rights attorney with 21 years of experience); Ramirez, 2014 WL 12675859, at *2-3 (awarding $500 per hour to plaintiff-side attorney with 21 years of experience and $600 per hour to civil rights attorney with 34 years of experience). Indeed, a preeminent civil rights attorney in San Diego, Michael R. Marrinan, opined in a different fee application that the prevailing market rate in San Diego for attorneys with 25 years of experience is $550 per hour. (See Doc. No. 281 Ex. A.)

The Court recognizes Mr. Powell's education and experience with civil rights law. He was admitted to the California Bar in 1992 and has prosecuted civil rights cases for approximately nineteen years. (Doc. No. 259-2 ¶¶ 3-4.) He is one of few attorneys in California practicing juvenile dependency civil rights law, (Doc. Nos. id. ¶ 11, 259-18 ¶¶ 9-10, 259-20 ¶¶ 13-15), and he represented Plaintiffs as the lead attorney on a contingency basis, (Doc. No. 259-2 ¶ 32). The results of this case, however, disfavor the award of an hourly rate as high as Mr. Powell requests. See Gonzalez, 729 F.3d at 1209 (holding district

courts may determine hourly rate based on the quality of results obtained). Plaintiffs' case involved a variety of claims, ranging from state law torts to constitutional violations, (Doc. No. 17), but Plaintiffs ultimately prevailed on only one claim and received only nominal damages despite asking for over $1 million in compensatory and punitive damages, (Doc. No. 245). Furthermore, Plaintiffs do not identify any case in which this Court awarded Mr. Powell fees at the requested rate of $700. See United Steelworkers, 896 F.2d at 407. And more generally, Plaintiffs do not identify a case in which this Court, or any other court, awarded $700 per hour for "similar services of lawyers of reasonably comparable skill and reputation." See Jordan, 815 F.2d at 1263. In sum, Plaintiffs have not established the reasonableness of $700 per hour for Mr. Powell. Based on its review of prior awards in this District, the parties' evidence, and the results of this case, the Court finds that Mr. Powell's reasonable hourly rate is $600.

*Sarah Marinho*

Ms. Marinho requests $350 per hour, but the Court finds that a reasonable hourly rate for her is $250. Admitted to the California Bar in 2013, Ms. Marinho joined Mr. Powell's practice in March 2016 and assisted in this case by conducting legal research and factual investigations, drafting motion briefs, and attending depositions. (Doc. No. 259-6 ¶¶ 3, 5, 6.) She was also second chair at trial. (Id. ¶ 6.)

While Plaintiffs' experts opine that Ms. Marinho's requested rate is reasonable, (see Doc. Nos. 259-20 ¶ 18, 259-22 ¶ 26), the County's expert recommends an hourly rate of $250, (Doc. No. 275-9 ¶ 114). As the County's expert points out, (Doc. No. 275-9 ¶ 80), Ms. Marinho does not cite any prior awards she or other attorneys have received at $350 an hour—or at any other rate, for that matter, (see Doc. No. 259-6). Rather, Ms. Marinho simply states that she "billed at a rate of $350 per hour in this case, a rate [she] submit[s] is appropriate based on the rates charged by attorneys of similar experience and background" in San Diego. (Id. ¶ 9.) Plaintiffs' expert Ms. Sobel does cite two prior Southern District awards in her brief discussion of Ms. Marinho's rate. (Doc. No. 259-22 ¶ 26 (citing Makaeff, 2015 WL 1579000; Medina v. Metro. Interpreters & Translators, Inc.,

139 F. Supp. 3d 1170, 1179 (S.D. Cal. 2015) (awarding $295 per hour to civil rights attorney with 3 years of experience in Employee Polygraph Protection Act case)).)

Having considered Ms. Marinho's experience, her involvement in this case, and the experts' opinions, the Court finds that $250 is a reasonable hourly rate.

*Gerald Singleton and Shawn McMillan*

Mr. Singleton and Mr. McMillan request hourly rates of $650 and $700, respectively. (Doc. Nos. 259-12 ¶ 5, 259-18 ¶ 14.) They were both admitted to the California Bar in 2000. (Doc. Nos. 259-12 ¶ 6, 259-18 ¶ 3.) Given the nature of Mr. Singleton's and Mr. McMillan's involvement in this case, however, the Court concludes that a reasonable hourly rate for both attorneys is $450. Their work on this case was limited and does not merit an hourly fee as high as requested. <u>Van Gerwen v. Guarantee Mut. Life Co.</u>, 214 F.3d 1041, 1046 (9th Cir. 2000). During their representation of Plaintiffs and Michael Taylor—that is, prior to Mr. Powell's substitution into this case—Mr. Singleton and Mr. McMillan performed limited tasks. They drafted and amended the complaint, unsuccessfully opposed several motions to dismiss, and engaged in unsuccessful settlement negotiations. (Doc. Nos. 259-12 ¶ 10, 259-18 ¶ 12.) After Mr. Powell substituted into the case, substantial litigation followed.

The prior awards Mr. Singleton and Mr. McMillan cite in their declarations do not persuade the Court that the rates they request ($650 and $700 per hour, respectively) are reasonable here. Mr. Singleton received $650 per hour pursuant to a Rule 68 offer and a joint motion for attorneys' fees, (Doc. No. 259-12 Ex. F (citing <u>Jennings v. City of San Diego</u>, No. 13-CV-322 (S.D. Cal. Jan. 6, 2014) (Doc. No. 44))), and received the same rate in a later case after winning an anti-SLAPP motion, (<u>id.</u> Ex. G (citing <u>San Diego Puppy, Inc. v. San Diego Animal Def. Team</u>, No. 13-CV-2783 (S.D. Cal. Mar. 17, 2016) (Doc. Nos. 73, 110))). Mr. McMillan cites awards he received in out-of-District cases that are, likewise, inapposite and do not substantiate his claim that $700 per hour is reasonable for his work here. (<u>See</u> Doc. No. 259-18 ¶¶ 15-17.) In sum, based on Mr. Singleton's and Mr. McMillan's limited involvement and the preliminary nature of their work in this case, the

13-CV-02818-H-JMA

Court concludes that a reasonable hourly rate for each of them is $450.

## ii. Paralegals' Hourly Rates.

Plaintiffs request hourly rates of $175 and $280 for Ms. Liu and Ms. Covill, respectively. Ms. Liu joined Mr. Powell's office as a paralegal in May 2015 and has worked on this case since Mr. Powell's office substituted into it. (Doc. No. 259-5 ¶ 4.) She does not hold a paralegal certificate but is taking classes to obtain one. (Id. ¶ 5.) Ms. Covill, who owns her own paralegal business, holds a paralegal certificate and has practiced as a paralegal for approximately 31 years. (Doc. No. 259-10 at 2.) It is unclear when Ms. Covill began working on this case. (See Doc. No. 259-2 ¶ 17.)

Plaintiffs' expert Mr. Leehey opines generally that the requested paralegal rates "are more than reasonable." (Doc. No. 259-20 ¶ 18.) Ms. Sobel agrees, (Doc. No. 259-22 ¶ 27), although the one Southern District case she cites, Franklin, has little bearing on this case. See 2016 WL 402249 (awarding 25% of class settlement fund as attorneys' fees without approving particular hourly rates). Plaintiffs submitted a declaration from attorney Donnie Cox describing Ms. Covill's extensive experience and research and writing abilities. (Doc. No. 279 ¶¶ 4, 5.) Mr. Cox, who has used Ms. Covill's services during two civil trials, notes that he has requested $280 per hour for Ms. Covill's services in a separate case, which is currently on appeal. (Id. ¶ 6.) The County's expert recommends hourly rates for Ms. Liu and Ms. Covill of $75 and $125, respectively. (Doc. No. 275-9 ¶ 114.)

In this District, $90 to $210 per hour is generally reasonable for paralegal work, but this represents "a wide range depending on the education, skill and experience of the particular paralegal." Makaeff, 2015 WL 1579000, at *5 (citing Brighton Collectibles, Inc. v. Coldwater Creek Inc., No. 6-CV-1848, 2009 WL 160235, at *4 (S.D. Cal. Jan. 20, 2009)); see also In re Maxwell Techs., Inc., No. 13-CV-966, 2015 WL 12791166, at *5 (S.D. Cal. July 13, 2015) (finding in shareholder derivative action that "paralegal rates approved in this district have generally ranged from $125 to $175, although they have been approved as high as $290").

Given Ms. Liu's and Ms. Covill's respective degrees of skill and experience, and the

13-CV-02818-H-JMA

generally permissible range of hourly rates for paralegals in this District, the Court concludes that reasonable hourly rates for Ms. Liu and Ms. Covill are $100 and $200, respectively.

### iii. Summary of Reasonable Rates.

The Court has determined that the following reasonable rates apply to Plaintiffs' attorneys and paralegals:

| Attorney/Paralegal | Reasonable Hourly Rate |
| --- | --- |
| Robert Powell | $600 |
| Sarah Marinho | $250 |
| Gerald Singleton | $450 |
| Shawn McMillan | $450 |
| Chang Liu | $100 |
| Alicia Covill | $200 |

### c. Lodestar Calculation.

The Court will calculate the lodestar figure upon reviewing supplemental briefing from Plaintiffs consistent with this Order. The supplemental briefing, which will not waive any of the parties' objections, should include revised billing records that reflect the Court's determination of a reasonable number of hours and reasonable hourly rates, detailed above.

### 2. Adjustments to the Lodestar.

The Court may adjust the lodestar figure upward or downward based on the Kerr factors. Gonzalez, 729 F.3d at 1209. The County requests a downward adjustment to account for Plaintiffs' "lack of success, excessive and unnecessary billing, and unreasonably high requested hourly rates." (Doc. Nos. 275 at 9, 275-9 ¶ 160.) Because the Court already considered these issues when determining a reasonable number of hours and reasonable hourly rates, no further adjustment to the lodestar is necessary. See Gonzalez, 729 F.3d at 1209 n.11. Accordingly, the Court adopts the presumptively reasonable lodestar figure, id. at 1201, which the Court will calculate upon reviewing Plaintiffs'

13-CV-02818-H-JMA

supplemental briefing.

**3. Out-Of-Pocket Expenses.**

As to any request for costs, Plaintiffs should first address the Clerk of Court, who will hold a hearing on Plaintiffs' Bill of Costs on December 14, 2017. (Doc. No. 274.) Plaintiffs are the prevailing party for purposes of taxation of costs. If any party is dissatisfied with the outcome of that hearing, they may file a motion to retax costs pursuant to Local Rule 54. See CivLR 54.1(h).

## CONCLUSION

For the reasons discussed above, the Court grants Plaintiffs reasonable attorneys' fees in an amount to be determined based on supplemental briefing consistent with this Order's determination of a reasonable number of hours and reasonable hourly rates. Without waiving any objections, Plaintiffs should submit supplemental briefing, including revised billing records consistent with this Order, on or before **January 12, 2018.** The County should file any objection on or before **January 26, 2018.**

**IT IS SO ORDERED.**

DATED: December 8, 2017

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

13-CV-02818-H-JMA